Hemphill, Ch. J.
The first ground for reversal, viz, that the judge erred in sustaining' tlie demurrer to the petition in favor of the defendant Lucretia Williamson involves a question of considerable importance, and that is whether tlie head of a family, if a single man, can mortgage' his homestead to secure the payment of a debt; and if a married mau, whether, with the consent of the wife, he can execute such mortgage.
That the question to be discussed may be the more fully understood, the danse of the Constitution regulating the exemption of the homestead will be cited: “The Legislature shall have' power to protect by law from forced sale a certain portion of the property of all heads of families. The homestead of.a family, not to exceed two hundred acres of land not included in a town or city, or any town or city lot or lots in value not to exceed two thousand dollars, shall not be subject to forced sale for debts hereafter contracted, nor shall the owner, if a married man, he at liberty to alienate the same, unless by consent of the wife, in such manner as the Legislature shall point out.”
By this provision the homestead is exempted from forced sale, but its voluntary alienation is not inhibited. Tlie right of disposition — certainly one of tlie most valuable of tlie incidents of ownership — is restricted only by tlie necessity, if tlie head of the family be married, of obtaining the consent of the wife in tlie form prescribed by law; and the owner having the legal, and it has been frequently termed tlie natural, right of disposing of "his property, can exercise all such powers over tlie subject-matter as arc not inconsistent with the plain and obvious intent of the law and Constitution. Is the alienation, which is the object of the suit, voluntary or forced? If the former, is it lawful? if the latter, it comes within tlie constitutional prohibition and’cannot be enforced by the process of the court.
A forced sale has been defined to be a sale made at tlie time and in the manner prescribed by law, in virtue of an execution issued on a judgment already rendered by a court of competent jurisdiction; (11 Mart. R., 610, 675; 8. N. S., 163; 1 La. R., 491,) or, in other words, a forced sale is one which is made under the process of the court and in the mode prescribed by law. (Civil- Code La., arts. 2580, 2594, 2595.)
Tlie characteristics of a forced sale, as thus defined, are applicable to the alienation prayed for by tlie petition. The plaintiffs seek to enforce tlie lien of tlie mortgage and effect the sale of tlie property under the compulsory process of tiie court, and in the time and mode prescribed by law; and this certainly comes within the description of a forced alienation. It is true that the defendants have voluntarily pledged tlie property as a security for the debt, and have agreed by implication to what under ordinary circumstances would have been its necessary legal effect, viz : that the property should be subjected to a decree of sale and foreclosure. But they cannot waive or renounce the-guarantee or immunity with which the Constitution shields the property. They cannot impose upon the courts the obligation or confer the power of decreeing the sale of property which is expressly exempted from the operation of a forced sale or sale by judicial process.
They can, if they choose, alienate it voluntarily. They are not deprived of tiie power of parting with their property; but their agreements cannot have the legal effect of changing a sale under an execution into a voluntary alienation ; nor can they require of courts to enforce agreements the object of which' is to expose property under tlie protection of the Constitution to forced sale. It is clear, then, that this suit, so far as it seeks a foreclosure of the mortgage, cannot be maintained, and that there is no error in the judgment sustaining the demurrer.
*56 ■ Here this opinion might close; but as the point was raised that tlie feme covert could not, under the mode prescribed by statute for conveying the entire interest which she may have in property, join with her husband in executing a mortgage, I will give the subject a cursory examination, and principally for the purpose of drawing a distinction between mortgages such as the one under consideration and mortgages generally, and especially of the wife’s separate property.
That the wife may by mortgage incumber her separate estate if the formalities prescribed for the conveyance of her entire interest be observed, has been already decided by this court, and as we have no doubt of the correctness of that decision, it maybe regarded as settled law. The opinion in Hollis and Wife v. Francois and Border has not been published except in the newspapers, and I will cite a portion of it at length: ‘‘It is held by the authorities to be beyond question that if a wife join her husband in a mortgage of her lands and levy a fine thereof, this will bind her heirs notwithstanding her coverture ; for as by such a process she may make an absolute sale of the estate, so she may make a conditional one thereof. (Powell on Mortgages, p. 703; Roper on Husband and Wife, p. 130.) Chancellor Kent, in Demarest v. Wynkoop, (3 Johns. Chan. R., 144) and in his second commentaries, (p. 166,) states the proposition as beyond doubt that a wife may sell or mortgage her separate property for the payment of her husband’s debts; that she can deal with her lands by fine as if she were a feme sole, and what she can do by fine in England she may do here by any legal form of conveyance,” &c.
The rule, as expressed in Powell on Mortgages (p. 706) is, that if the wife joins her husband in a mortgage of her lands and levies a fine thereof this will be binding upon her and her heirs, notwithstanding her coverture; for as by such process she may make an absolute conveyance, so she may make a conditional one thereof. In 1 Hilliard on Real Property (p. 122) it is stated that a husband and wife may join in a mortgage of (he wife’s land as well as an absolute deed ; but the wife’s interest shall be thereby incumbered only to the amount of, the mortgage. • (2 Pick. R., 517.) In Calm v. Niemcewiez (11 Wend. R., 312) the wife "bad joined with her husband in a mortgage of her lands. No question arose as to her power of charging her property in the mode prescribed for its alienation, but her rights as surety of the husband by virtue of the mortgage were discussed and determined.
But, recurring to mortgages of the homestead, it is contended that the Constitution contemplated an entire not a partial alienation or incumbrance, and that the wife’s assent to any disposition of the property less than the absolute sale of the entire interest is not binding; and further, that a mortgage cannot be comprehended under a power to alienate, for the reason that a mortgage is not to be regarded as a conveyance of the land, but as a mere security for the money barred or debt contracted.
There is no doubt that if the power conferred on the wife was clearly intended to extend only to the alienation of the fee-simple, and negatived its exercise as to any incumbrance or transfer of a less interest, it must be strictly pursued. I do not deem it necessary to enter into a discussion of the, doctrine of powers. The rule, that the wife has the power to join her'husband in a mortgage of her own lands, for the reason that she can join with him in their absolute sale, is to be found in all the authorities. But in treatises on mortgages there are also discussions as to the effect and extent or restriction of powers; as, for instance, whether the power to sell for the purpose of raising money to pay debts, portions, &c., includes a power to mortgage, (1 Powell. 61,) and whether, under a power to raise money out of the rents and profits, there be implied a power to sell or mortgage the land itself. (Powell, 62, 64; 4 Kent, 147, 148.)
In a subsequent portion of this opinion I will refer to the practical effect of the construction that the power of the. wife to assent to an alienation does not include the power to mortgage, and will proceed to consider the objec *57 tion that a mortgage cannot be comprehended under the term alienation, on tlie ground that it does not convey the land but only hypothecates it as a security for the debt. An examination of the common-law authorities will show the difficulty of ascertaining, with precision, the nature and incidents of a mortgage or of giving a definite denomination to the interests of the mortgagor or mortgagee. They vary according to the light in which they are viewed. (1 Powell, 252.) In equity the mortgagor is considered as the owner of the estate, and he possesses many of the incidents of ownership; but at law he is not regarded as the legal owner. (1 Powell, 251.)
Chancellor Kent, in his Commentaries, (vol. 4, p. 133,) defines a mortgage to be the conveyance of an estate by way of pledge for the seenritj' of the debt, to become void on its payment. The legal ownership is vested in the crediior; but in equity the mortgagor remains the actual owner until lie is debarred by bis own default or by judicial decree. Hilliard (vol. 1, p. 371) defines a mortgage to be a conditional conveyance of land, designed as a security for the payment of money or the performance of some other act, and to be void upon such payment or performance.
By the courts of common law the strict rules pertaining to conditions were rigorously enforced in relation to mortgages. If tlie money were not paid at the time and place prescribed, the estate was absolutely forfeited.
But the courts of equity, at an early period, interfered to relieve against such hardship; and a payment of the debt, interest, and costs within a reasonable time after the day appointed was deemed sufficient. They were cautious and scrupulous in malting what ivas then deemed encroachments on the common law, but they finally succeeded in supplanting almost entirely its rigorous rules of construction,'(1 Hilliard, 372; 4 Kent, 159,) and in establishing the principle that a mortgage is a mere security for the debt, and that until foreclosure the mortgagor remains the real owner of the fee; and in their determination to' protect the mortgagor from suffering, they appeared at one time disposed to deprive parties of the power of making their own contracts or of making such dispositions of their property as were by themselves deemed the most advantageous. For instance, the difficulties and delays attending bills to foreclose were so great that powers of sale, authorizing the mortgagee to sell the property for the satisfaction of the debt, were introduced. (1 Powell, 9; 4 Kent, 146.) But their validity was questioned; and Lord Eldon declared that such a deed was of a very extraordinary kind, and that there were clauses in it upon which it would be Very difficult 'to induce a court of equity to act. Ilis doubts do not appear to have been entertained by the courts of the United States; and that such power is valid is now well established. (1 Hilliard, 383; 18 Ves. R., 344 ; 2 Met., 29;. 4 Kent, 145.)
But to tlie question whether a mortgage, can be comprehended under tlie power to alienate, it seems from the authorities, as we have heretofore stated, to have been so held by courts of equity as well as law, and as well before as after the establishment of the doctrine that the mortgagor, until foreclosure, was the real owner of the estate. In fact, mortgages of the wife’s inheritance are frequently (and always without objection to their validity) considered by courts of equity on questions relative to the extent of charges upon or modification of the wife’s estate, and her right of exoneration out of the estate of her husband. (Hollis and Wife v. Francois and Border.) A mortgagee, even in courts of equity, is frequently styled a purchaser. He is regarded as a species of purchaser. (2 Powell, 653, 654.) In Walwyn v. Lee (9 Ves. R., 30) lie is declared to he a purchaser for valuable consideration, a particular species of purchaser, who does not,' from the nature of the transaction, ordinarily take possession of the thing mortgaged. Mortgagees, lessees, &c., are embraced under a plea of a purchase for valuable consideration without notice. (2 Powell. 054.) And a purchaser is defined to be a person who innocently, Without fraud or surprise, for a valuable consideration, acquires an in *58 terest or a right. (1 vol. Ab. Cases in Equity, p. 353; 2 Powell, 654.) Alienation of property absolutely or by wav'of mortgage is a customary mode of expression in treating of the subject of mortgages. (1 Powell, 214.)
Under the Spanish law the principle, the establishment of which by Courts of Equity is deemed so splendid a triumph, was always recognized, viz: that the mortgage was but a mere security for the debt. (1 White, 130; Febrero, vol. 3, p. 257.) But under that system of jurisprudence it is said to be a species of sale. (1 White, 140; Febrero, 3 vol., p. 257.) And it is also said that he who has the power of alienating has the power of mortgaging- his property. (Febrero, vol. 3, p. 258.)
And hej-e I would suggest the readoption of the Spanish or a more simple form of mortgage. The form in use is deceptive and fictitious. It purports to be a perfect deed of conveyance with conditions. It has all the parts of a conveyance in fee-simple of the premises, the habendum,, tenendum, &c., with full covenants of. warranty. In terms it conveys the, estate, with (lie right of taking it back on the payment of the money, while its legal effect, is to give a mero lien upon the land to secure this payment, with the right of foreclosure on default of the mortgagor.
Upon consideration of tiie point under investigation we deem ourselves warranted in the conclusion that a general power of alienation in the wife not conferred for any special object or to effect any specific purpose includes tiie power of mortgage. I cannot perceive any controlling- object or purpose which would necessarily restrict the power of the wife tó assent to (lie alienation of the homestead to an absolute sale of (he entire interest in the property, and we have seen from the authorities cited that mortgage is frequently gpoken of as alienation, at least .mb modo, and that mortgagees are termed purchasers, and this in Courts of Equity, where the mortgagor is considered as the real owner of the laud, though his rights are subject to so many modifications by positive law that deductions as to those rights, drawn from the fact of his ownership, would most likely be egregiously erroneous. For instance, under the supposition that the mortgagor remains the real owner of personal property which is mortgaged, he lias the best right to its possession. Now, if his rights were ascertained and settled by reason alone he could not be guilty of larceny by any removal or disposition which he might make of the property. The act would not have the ingredients which legally constitute the crime. But when we recur to the law to ascertain his rights, we find that by removal of the property bej-ond or fraudulent disposition .within the limits of tiie State, he is declared to be guilty of grand larceny, and punishable accordingly.
Now, let us inquire whether the construction contended for, viz, that the power to alienate does' not include the-power to mortgage, would operate, as it is supposed, to the benefit of the wife; how much power is taken from the husband or conferred upon tiie wife, and how much protection is afforded the family under such construction of the term “alienation” or “sale” which is used in the clause of the Constitution.
It will be conceded that before tiie adoption of the Constitution the husband had the power of disposing of his homestead, if it were his own property, voluntarily, without the assent of any person whomsoever, and in any mode or for any estate or interest which he might deem proper. The statute of 1839 exempted his homestead from forced sale, but did not in any respect encroach upon his absolute power of disposition-by voluntary alienation. This power exists still, but with the modification that the wife’s assent (o an alienation of the property must be obtained. Now, if this assent be restricted to the sale of the entire interest, then the wife cannot, interfere with the husband’s control, except and only in the event that he is attempting to convey the fee-simple of the property. She could not pretend to obstruct, any partial alienation. Her assent would not be sought, and would be totally unnecessary, for the.reason that, under the construction contended for, she could have *59 nothing to do-with liis partial disposition of the property, her power being limited to an assent to an alienation of the entire interest, and therefore incapable of extension to any other. He might grant, an estate for his own life or for that of his wife; he might lease it for ninety-nine years, or mortgage. it and place the mortgagee in possession until tlie debt be satisfied out of the rents and profits; or lie might make other conditional and partial dispositions fit the property which would effectually deprive the wife and family of the benefits intended to be conferred under the constitutional exemption — and all this without the consent of the wife or without the right of complaint on her part, for under the construction urged she could only complain of an absolute alienation of the whole interest without her assent. Again, sale and alienation arc synonymous terms. The Constitution protects from forced sale; and if sale means an absolute transfer of tlie entire interest, what is to prevent the Legislature from devising a writ by which the homestead might he delivered to'the sheriff" or to a creditor until tlie debt be discharged out of the rents and profits? This would not be a forced sale, (if sale-means and means only a conveyance of tlie entire interest,) and would therefore not be inhibited by the Constitution. But is the word “sale” in the provision to be understood"in a. signification so restricted and limited? We think clearly not. The Constitution obviously intended that the homestead should be exempted from the operation of any species of execution, or from any forced disposition oi the property, whether partial or total, which would disturb tlie family in tiie quiet and uninterrupted possession of their home with the "property (hereto attached. Tlie beneficence of tlie provision has a much wider range than to protect the family from a sale which would utterly extinguish all right in the property. It shields them also from any extents or deliveries of the property or from" any forcible appropriation of its rents, issues, and profits. It protects tlie domestic sanctuary from every species of intrusion which, under color of law, would subject tlie property, by any disposition whatever, to the payment of debts.
Under the construction which I place upon the terms “ sale ’’and “alienation ” the homestead cannot be affected by any species of compulsory disposition, whether denominated sale or otherwise, nor can it be voluntarily disposed of without the assent of tlie wife; hut with her assent it may be transferred or incumbered in any mode deemed judicious or advisable. She may assent to an absolute sale for money loaned, or for a previous indebtedness; and for tlie like consideration she may assent to a mortgage, with a power of salo by tlie mortgagee on default of payment.. A mortgage depending for its enforcement on judicial process would'be ineffectual, because a sale under such process would be forced. But a sale under a power in a mortgagee or trustee would be voluntary; and the assent of the wife would give as much validity to such mortgage as to an absolute and immediate sale.
All transactions in which tlie as=eut of tlie wife is obtained to any disposil ion of the homestead, whether by lease, mortgage, or absolute sale, would doubtless be scrutinized by the court with jealous vigilance, and her rights be protected against the influences of force, fraud, or mistake.
It will be unnecessary to consider tlie other grounds taken for reversal.
Tlie mortgage, wiili its certificate and assignments, was properly ruled out on the trial. The demurrer being sustained, the mortgage had no further connection with the cause. The suit became a proceeding to recover judgment on tlie note, and whether an invalid mortgage had been executed or not was wholly immaterial.
It is ordered that the judgment be affirmed.
Lipscomb. J.
It is not important, to notice in detail all tlie errors assigned, as our decision on the right (o sell llie homestead, under a decree for foiviosing tlie mortgage will dispose of all tlie other preliminary questions raised. Tlie case lias been ably argued by the counsel, both for the appellant and *60 defendant. on the construction oí the 22d section of the Vlltb article of the Constitution of the State. It is as follows:
“Tlie Legislature shall have power to protect by law from forced sale a certain portion of the property of all heads of families. The homestead of a family not to exceed two hundred acres of laud not included in a town or city, or any town or'city lot or lots in value not to exceed two thousand dollars, shall not be subject to forced sale for any debt hereafter contracted, nor shall the owner, if a married man. be at liberty to alienate lite same, unless by consent of tlie wife, in such maimer as the Legislature may hereafter point out.” (Hart. Dig., p. 73, sec. 22.)
The first sentence of this section authorizes the Legislature to exempt a certain portion of the property of the head of a family from sale. It is left discretionary; nothing imperative on the Legislature to aet on tlie subject; and it is supposed toi have in view certain personal property necessary to Uto comfort and support of the family. The balance of tlie section, however, is imperative so far as to exempt from a forced sale the homestead, and only leaves to legislation tlie mode by which a married man can alienate it with the consent of his wife, keeping up the constitutional inhibition to a forced sale of the homestead throughout., and only leaving the Legislature to point out the mode of authenticating the consent of tlie wife to a voluntary alienation by Iter husband. lean perceive nothing in tiie section of the Constitution to prevent the head of a family who lias no wife from making a voluntary sale of the homestead. Its protection, under such circumstances, would only extend to a forced sale. He is only restrained from making a voluntary-sale, where he is a married man, without the consent of his wife.
It is, however, contended that tlie sale by mortgage was a voluntary sale, in this case, with tlie wife’s consent and in tlie manner pointed out by the Legislature. I do not propose discussing tlie authentication of the wife’s consent, whether it was made in conformity with tlie law or not. That I consider a mere incidental question, not reaching tlie merits of the case, and of but little importance. I understand the proposition from which tlie plaintiff derives or claims his right of selling the homestead to be this: that the wife, by giving her'consent to tlie mortgage of tlie homestead, gave her'consent to a voluntary sale or alienation thereof. And in support of tlie proposition it is contended that the mortgage passed tlie legal estate to tlie mortgagee coupled with a condition of defeasance. That such was the doctrine of the common-law courts for a long time is not to be controverted. But courts of equity never so held a mortgage. With them it was only considered as an incumbrance of the fee by way of giving a security for tlie debt., and that the fee really remained in the mortgagor, and had not passed to the mortgagee; that it only passed to him a chattle interest. (See 4 Kent Comm., 159.) This doctrine of the common-law courts, that a deed of mortgage passed the whole legal title of tlie mortgagor to the mortgagee, although steadily maintained for a long time, was destined to yield to tlie inore enlarged and just principles of equity jurisprudence, anti tlie rules of the latter became incorporated into the jurisprudence of the former. At what tirade this great change in tlie legal effect of a mortgage took place in the common-law courts cannot be precisely ascertained, because it was not effected by legislation, but gradually by what was conceived to be more liberal and enlightened conceptions of tlie principles governing common-law courts.
It was said by Lord Redesdale that “the distinction between strict law and equity is never in any country a permanent distinction. Law and equity are, in continual progression, and the former is constantly gaining ground on the latter. A great part of what is now strict law was formerly considered as equity; and (he equitable decisions of tins age will unavoidably be ranked under the. strict law of the next.” (Milford, 428.) Tlie late Chancellor *61 Kent, in defining the different rules that obtained in courts of law aud equity ou tile effect of a mortgage, and of the enlarged and liberal principles administered in the latter, siiys that “their influence has reached the courts of law, and the ease of mortgages is one of the most splendid instances in the history of our jurisprudence of (ho triumph of equitable principles over technical rules, aud of the homage which those principles have received in courts of law.” (4 Kent, 158.) And more than three quarters of a century ago Lord Mansfield declared the distinct lights of mortgagor and mortgagee. In Martin v. Mowlin (2 Burr. R., 978) he said “ (hat a mortgage is a charge, upon the land,” (not the fee-simple.) Aud the same judge, in King v. St. Michael’s. (Doug. R., 602,) held that a mortgagor in possession gains a settlement, because the mortgagee, notwithstanding the form, has but a chattel, aud the mortgage is onlj' a security; and he said that “it is an affront to common sense to say the mortgagor is not the real owner.” There is no doubt that from the time of Lord Mansfield, in England courts of law have held mortgages (as they always were by courts of equity) to be not the conveyance of the fee, but only a security for the payment of money. The very learned and luminous view of the distinct right of mortgagor and mortgagee of Chief Justice Ilosmer, of the Supreme Court of Connecticut, in the case of Clark v. Beach, (6 Conn. R., 142,) shows the same rule to have been firmly established in the courts of the United States, and that the mortgagor is the real owner of the land, incumbered with a lien for the payment of the debt. The fee-simple is in the mortgagee, and the interest of the mortgagor before foreclosure cannot be taken in execution. (Huntingdon v. Smith, 4 Conn. R., 235.) So in Roath v. Smith (S Conn. R., 133) it was expressly decided that “the fee of the land mortgaged is in the mortgagor; that the mortgage is an incident to the debt, a'mere chose in action; that on the death of the mortgagee, like all other chattels, it vests in his personal representative; and that a bill of foreclosure can no more be sustained by the heirs of the mortgagee than a suit upon a bond or any other chose in action. The mortgagor’s interest is transferable onlj by deed, duly attested bj two witnesses and acknowledged before a justice; it descends to his heirs; it is subject to execution as real estate; it is liable to dower; it gives a settlement by freehold estate; it is, in England, a freehold qualification for members of Parliament; and,,in short, by uniform decision it is the ownership of the land. On the other hand, the interest of the mortgagee is transferable without deed by a delivery of the security only; it is vested in executors; it is not liable to execution; it is not subject to (lower; it gives no settlement; it authorizes no vote, and by invariable and numerous determinations is a chattel interest or chose in action on!j\”
From the summary of the incidents of a mortgage, extracted from the opinion of Chief Justice Ilosmer, it is manifest that a mortgage is not an alienation of real estate. I have looked into the authorities of other States, and I find the doctrine to be the same, almost without exception. I have not cited them because I have considered it not necessary to do so. I have relied mainly on the opiuiou of tlie chief justice of Connecticut- and the cases cited by him, because, in addition to his high character as a jurist, his opinion comes to us recommended by the distinguished and lamented Chancellor Kent, as showing “ the growth and consolidation of the American doctrine, that until foreclosure the mortgagor remains seized of the freehold, and that the mortgagee has, in effect, but a ohattel interest.” (4 Kent. Comm., 160, note B.)
The question whether a mortgagee could sustain an action to try title on his mortgage in this State might well be discussed ; here, as in England and in some of the States of the confederacy, a mortgagee out of possession is allowed to bring his action of ejectment. Aud it is sustained on the ground of its being necessary to the enforcement of the lien, and on a principle of a quasi tenancy being created by the mortgage. Believing it, however, not to be at all material to a correct decision of the case before us, and knowing that a more *62 .appropriate occasion will be presented by a ease from Red River county, in the Tyler district, I lutvo thought, it right and proper to decline its discussion at this lime.
1 will now consider the proposition of the appellant's counsel, that the power to, make a voluntary sale, if a mortgage was nota sale, included a power to carve out a less estate, and also a power to incumber with a mortgage. The first deduction may he answered merely by saying, if the doctrine we have examined bo sound, the mortgage carves out no estate whatever in the land, as no (itle passes by it,- the mortgagor remains the legal owner of the fee. We are therefore not called upon to '’decide whether a'voluntary lease for a year or years would or would not be repng-nant to the inhibition in the Constitution of a voluntary alienation of the homestead, without, the assent of the wife, in ihe way to be pointed out by the Legislature. That the right to sell includes the. right to incumber by a mortgage is no doubt thought to be sustained by the maxim that the greater power includes the less. lUthe maxim is examined it will be found to have obtained its currency by its application to a differentelass of cases, growing, for the most part, out of wills and settlements. If.land is charged with the payment of particular legacies with power to sell for the purpose of raising the fund; if that fund can he raised by a mortgage, by a lease for a year or yearn, or by 1 lie sale of a part only, and the trustee should resort to one of these modes of raising the fund in preference to a sale, it will be held a good execution of the trust. Should ho refuse to do so, chancery will compel him to do it; and why? because if the fund can be raised without entirely defeating and destroying the right of the heir or remainder-man it should be so raised'. The fund should always be raised in away to work the ¡east injury to land on which the legacy is charged. But I suppose that where either the statute or the instrument creating the power directs a particular modo in which this trust should bo executed, a resort to any other would not be held to he an execution of the trust. Such seems to be the opinion of Chancellor Kent ; and lie refers to Ivy v. Gilbert, 1 P. Wms., 13; and Miller v. Banks, 3 P. Wins. 1, as sustaining the same doctrine. (4 Kent, 148.) It is very certain that the maxim is subject to many exceptions. A trustee acting under a special trust for the sale of land when the object was to alienate the .whole, title would have the power to sell but no power to lease or mortgage. So if one, under an order or decree of the court, was directed to sell, his power would he restricted to the terms of the authority given, and would not include the power to do something of less dignity. The ancients have quite a conceit for quoting mathematical propositions, and some of them if applied to practice, without exception, would run into ridiculous absurdities. The law in this case having pointed out tin; mode in which a voluntary alienation with the consent of the wife should be executed, that mode alone must be pursued; and an incum-brance. on the homestead is not, provided for in the law directing the mode in which the wife’s assent to the alienation shall be verified.
But if it is admitted that a wife may mortgage her separate property under the rule that a power to sell would include the power to incumber, .yet nothing, in tin's ease, would be gained by the mortgagees from the concession ; for the homestead is not her separate, property; she lias no property in it. The husband is only permitted to alienate it, with her assent, in the mode to be pointed out by the Legislature. And the Legislature lias not pointed out a mortgage as I he mode. 'Until there has been legislative action the husband would he entirely-without power of sale; and when the Legislature pointed out the mode it must be strictly pursued, and excludes all others. Chancellor Kent says: u But if the'execution of a power lie prescribed by a particular method, it "implies that the mode proposed is to be followed, and it contains a iicgat ive upon every other mode.” (4 Kent,T4S.) The Constitution expressly prohibits a forced sale, and only permits a voluntary sale by a married man when it is with the assent of the wife, in the mode to be pointed out by law. *63 The law has pointed out the mode in which it shall be voluntarily alienated ; ami this method is not by mortgage. That the wite had .voluntarily assented to lhe alienation of the homestead in this ease can be sustained on no other hypothesis than that the mortgage was the alienation (hereof. In addition to tlie authorities already cited, to show that a mortgage does not amount to an alienation, I will in conclusion on this subject refer to the same high authority. Chief .Justice llosmer. In Leonare v. Bosworth, 4 Conn. R., 423, he says: •‘I shall limit my opinion to the motion in arrest of judgment and to this precise question, whether a mortgage deed is an alienation of land within the second section of the act to prevent maintenance. The second section provides ! hat whosoever shall attempt, by an instrument in writing under his hand, to alienate any of the claims or rights above described, or shall receive any conveyance to him of them, shall forfeit one half of the value of the lands attempted to be alienated as aforesaid. Is a mortgage.an alienation of land? The eases cited by 1 be defendant shows t hat it is hot, and the point has been frequently decided in'tIlls court.” Onr statute points out the mode for the verification of the wife’s assent to the alienation of the homestead. Is the mortgage in this case an alienation? Isay, from the authority of adjudged cases and oil principle, it is not.
But. independent of the principles which have been discussed and which are believed to be. conclusive against the appellants. I wouM put it on higher ground : on the plain and obvious construction of the Constitution, one part of which, at least, is plain and explicit, without any ambiguity — “ that the homestead shall not be subject to forced sale for any debt hereafter contracted.” It is absolute and unqualified. Now, in the very teeth of this prohibition, the plaintiff in his petition asks, not for a confirmation of an alienation to which the wife had assented hi the mode pointed out by law, but a decree for a forced sale of the homestead. Put it up as you will, it is a forced sale that is sought. If it had been an alienation with tiie wife’s assent, why ask a sale? Any sale by order of the court would he a forced sale ; the term is too well uniierslood to require comment. The petition’s asking for what the Constitution directly prohibits was a good ground for a demurrer, and would have been good in arrest of judgment or bn error in this court. I concur in the affirmance.
Wheeler, J.
I am not well satisfied that the sale under a decree of foreclosure of a mortgage isa '‘forced” sale in the sense in which that term is employed in the Constituí km. That the power of alienation includes that Of mortgage, I entertain no doubt. Henee I do not doubt (hat the wife may execute a valid mortgage. And I incline to Hie opiniou that the power to mortgage, executed, includes an authority to sell when necessary to give effect to the mortgage.
Judgment affirmed.
PETITION POR KEHEARINO-.
To the Hon. the Supreme Court: The appellants in the above-entitled cause would most respectfully represent through their counsel that the above cause lias been decided on grounds not really anticipated by said counsel until lie was called upon to meet them on the argument; that- not anticipating that the court would be. disposed to entertain with any favor the doctrine that would* restrain the voluntary alienation of property in any form- most desirable and beneficial to sueli as might own or possess it, the counsel for appellant was not fully prepared to meet and discuss a question so important.
It is believed that the honorable Supreme Court must fully entertain the view that the decision is one of a most important nature, and if allowed to *64 stand in its present form introduces a new feature by judicial construction upon what lias generally been understood by the community to have been the law. Eights have become vested (so far as agreement could vest them) to an extraordinary extent. Capital has sought investment'on mortgage securities without scruple. To give the words in the Constitution a new and unexpected signification, it is trusted will not be done without the most careful and deliberate examination of the question in all its bearings proper to be considered.
It is regretted that the discussion had not fallen into abler hands, and to some one better prepared in the effort t.o uphold mortgage securities. The inherent reasons, however, for sustaining mortgage securities are scarcely less for those to be made in the future than for upholding those already made. Every motive of policy will be fo,nnd to cluster on the side of sustaining mortgage'securities of all kinds unless the fundamental law forbids it.
It is believed to be the universally received doctrine that a mortgage or deed of trust passes the legal estate, and if executed to secure a debt or the performance of an agreement is subject to a defeasance. The mortgage passes the legal estate, though not an indefeasible estate. There is no law of Texas declaring a contrary doctrine.
A mortgage deed is a voluntary sale of the legal estate. A trust deed is the same.' A trust is equally ingrafted upon each, coupled with a power in some form to carry out the "execution of the trust. When founded on a consideration, neither the deed nor the power to execute, the trust is revocable. If they cannot be viewed in this light without qualification, then judicial decisions and language are inadequate to declare principles. (4 Kent Comm., 133, 141, 146, 147.)
Take the case at bar, for instance, as an illustration. The deed proceeds to make a full fee-simple conveyance in forra as strong as language can-make it to the grantees, their heirs and assigns, and warranting the title, and then adds: “In trust however;” and then proceeds to declare the trusts created. After declaring the trusts created. Williamson and wife, by way of conferring power for the execution of those trusts, “ authorize and request the honorable the District Court of Harris county to enter against them a judgment for the said sum, and a decree to sell the said property to satisfy the same, waiving all necessity of process, service, citation, or appearance on their part,” and also, “ waiving all formalities, and especially waiving all exemption of said property by law from sale under execution as our homestead.”
Unless words arc meaningless it would seem-that Williamson and wife bad clone all in their power to make a trust conveyance;-to declare and ingraft the trusts upon it; and to confer the amplest power possible for.the execution of the trusts declared. This they did voluntarily, and for an executed and acknowledged consideration.
If husband and wife have the right to sell they have the right to execute a power to sell. If they execute any such power for a consideration that makes the power irrevocable, their power over the subject-matter cannot be recalled unless the courts can make new contracts for them instead of carrying into effect the contract already made.
A “voluntary sale of the legal estate” at the time of the adoption of our Constitution had a fixed and known meaning. Commentators on the law and judicial decisions had-all combined to define it. The people of Texas adopted their fundamental law with reference to that, definition, as contradistinguished from forced sale. Can it now be claimed that the acceptation and meaning of terms can be changed without- violating, at least in effect-, the interdict against making laws retrospective? If a Legislature could not do it by enactment, much less would a court be disposed to do it by judicial construction. Principles in point analogous to this have been established by high authority.
Note 17.—Shelby v. Burtis, 18 T., 644; Jordan v. Peak, 38 T., 429.
Note 18.—Lee v. Kingsbury. 13 T., 38: Jordan v. Peak, 38 T., 429: Chiptnan v. McKinney, 41 T., 76.
Note 19.—Shelby v. Burtis, 18 T., 644.
The term “voluntary conveyance” or “voluntary sale” applies to every interest contracted to be sold or conveyed by the parties making it. Idem-braces all things where something specific passes by the terns of the contract. If an interest passes in the specific thing contracted for, all the incidents attach to render the interest purchased available as between the contracting parties.
Tlie term forced sale must be made to mean the sale of a thing not specially sold, pledged, or hypothecated by contract. It is submitted whether any other definition will stand the test of examination as a legal definition.
A wife might say and prove she was forced to join in the sale of the homestead to prevent starvation. Still, would it be a forced sale? Would id be any more a forced sale to sell the homestead by judicial decree that she bad conveyed by mortgage or deed of trust, with a conveyance of all the powers incident to the execution of the trust ?
The foregoing propositions are respectfully submitted to the honorable the Supreme Court. The counsel for the appellants assures the court that in his behalf he can substantiate them all by reason and the highest judicial authority; and iñ view of the importance of the question in this case would aslc the privilege of a rehearing in the cause at the next term to be held at Galveston. All which is respectful]}' submitted.
Petition overruled.