Black *et al. vs.* Cohen *et al.*

JAMES C. C. BLACK *et al.*, plaintiffs in error, *vs.* JOSEPH J. COHEN *et al.*, defendants in error.

· ALFRED SHORTER *et al.*, plaintiffs in error, *vs.* THE MAYOR AND COUNCIL OF ROME *et al.*, defendants in error.

1. Bonds issued by a municipal corporation having lawful authority to issue such instruments, are, in the hands of innocent purchasers, binding, notwithstanding irregularity or fraud in the manner in which they were placed upon the market.
2. Power vested in a municipal corporation to make all contracts which it might deem necessary for the welfare of said city, includes the authority to issue bonds.
3. Certificates of indebtedness issued by a municipal corporation, receivable in payment of public duties, are binding upon the city, notwithstanding the fact that such act was in violation of a penal law.
4. Where bonds are issued by a municipal corporation to redeem a currency binding on the city, it was competent for the general assembly to ratify such issuance.
5. Where the title of an act specifies some of the objects for which it was passed and contains the general expression, "and for other purposes," portions of the act not especially indicated in the title are nevertheless valid.
6. Where the subject matter of legislation is the subscription to stock of railroad companies by a municipal corporation, the fact that an act and an amendment thereto, authorize the subscription by said corporation to the stock of two or more railroads, does not render them unconstitutional as referring to more than one subject matter.
7. Authority to subscribe to stock of railroad companies necessarily implies that such municipal corporation should provide the means to pay therefor.
8. Where it is submitted to the citizens under the provisions of the con-

stitution of 1868, whether a municipal corporation shall subscribe to a work of public improvement, a majority of those voting being in favor thereof, will authorize such issue.

Municipal corporations. Bonds. Charter. Constitutional law. Laws. Elections. Before Judge UNDERWOOD. Floyd county. At Chambers. June 30, 1874.

For the facts of this case, see the decision.

WILLIAM H. HULL; JOEL BRANHAM; HAMILTON YANCEY, for the bondholders.

D. S. PRINTUP; FORSYTH & REESE; WRIGHT & FEATHERSTON, for the tax-payers.

WARNER, Chief Justice.

This was a bill filed by J. J. Cohen and others, citizens and tax-payers of the city of Rome, praying for an injunction to restrain the mayor and council of said city from levying and collecting an extraordinary tax for the payment of the interest due on certain described bonds, as well as for the payment of said bonds issued by said city, on the ground that said bonds were illegally and fraudulently issued, and that the same may be declared null and void. The defendant answered the bill, as well as other parties who were holders of the city bonds, and who were allowed to come in as parties defendants. The bill did not waive discovery, but required an answer to the allegations made therein. On the hearing of the application, the presiding judge, acting as chancellor, granted the injunction restraining the levying and collecting an extraordinary tax to pay the interest coupons attached to the bonds issued by the mayor and city council of Rome to pay the subscription for stock to the North and South Railroad Company of Georgia, and the sixty-five bonds issued to redeem what is called city currency, numbered from one to sixty-five, inclusive, but refused the injunction to restrain the raising, by extraordinary tax, money to pay the $5,000 00

bonds called fire bonds and interest, and interest coupons on the bonds called the Memphis Branch Railroad Company bonds, and the water works bonds. Whereupon both parties excepted. The complainants allege in their bill that the bonds were issued by the defendant without authority of law, and that the same were irregularly and fraudulently issued by the defendant: The defendant denies in its answer, the allegation of fraud, and sets forth the manner and the purposes for which the bonds were issued.

1. The main controlling question in this case is, whether the defendant had, as a municipal corporation, lawful authority to issue the bonds. If it did not have the lawful authority to do so, then the bonds are void, and no extraordinary or other tax should be levied and collected to pay them, or the interest due thereon. But if the bonds are not void for the want of lawful authority to issue them, although the same may have been irregularly or fraudulently issued by the defendant, it is bound to pay them to the innocent holders thereof, and therefore should levy and collect the extraordinary tax for that purpose. It appears from the record that the bonds are payable to bearer, and due at a future date, have been negotiated, and are now in the hands of different parties as the holders thereof.

2. It is insisted that the sixty-five bonds, numbered from one to sixty-five, inclusive, issued to redeem the city currency, were issued without authority of law, because the defendant was not authorized to make a contract by issuing its bonds for that purpose, and that the currency which the bonds were issued to redeem, was illegally issued by the defendant in violation of the statute law of the state; that the act of the general assembly of the 23d of August, 1872, legalizing and making valid said bonds, could not ratify an illegal transaction. It appears from the record that the currency which the bonds were issued to redeem, were certificates of indebtedness issued by the defendant for the purpose of liquidating the indebtedness of the city, and were receivable for all public dues. By the 13th section of the original charter of the

city of Rome, the defendant had "special power to make all contracts, in its corporate capacity, which it might deem necessary for the welfare of said city." All contracts would necessarily include contracts under seal, and a bond is nothing more than a contract under seal.

3. As to the illegality of the currency which these bonds were issued to redeem, it will be seen by reference to the act of 1851, on which the 4456th section of the Code is based, that although the defendant might have been indicted and punished for issuing the currency in violation of its provisions, still, it was bound to redeem that currency. The fourth section of that act declares, "that the bills, notes or checks, if paid away, or tendered in payment, contrary to the provisions of this act, shall, notwithstanding anything contained in this act, be valid, and collectible the same as any other note, bill or check, and shall be subject to taxation at the discretion of the legislature:" Pamphlet Acts 1851-2, page 26. The principle contained in that act is right. If the defendant has received the benefit of the currency issued by it, though issued illegally, it ought to redeem it, and it was not illegal to make a contract for its redemption by the defendant, in issuing its bonds for that purpose, inasmuch as it was a contract "for the welfare of the city."

4. Besides, the defendant being legally bound to redeem that currency, it was competent for the general assembly, by the act of 23d of August, 1872, to ratify the issuing of the bonds, if any ratification was necessary to have made them valid. As to the discrepancy as to the date of the bonds mentioned in the title and body of that act, which were intended to be ratified, see the decision of this court in *Hill vs. The Commissioners of Decatur*, 22 *Georgia Reports*, 203.

5. It is further insisted by the plaintiffs in error that the Memphis Branch Railroad bonds and the North and South Railroad bonds are void, because the acts of 14th of October, 1870, and 1st of December, 1871, authorizing the defendant to subscribe to stock therein, were passed in violation of that provision of the constitution of 1868 which declares, "Nor

shall any law or ordinance pass which refers to more than one subject matter, or contains matter different from what is expressed in the title thereof." And because a majority of the whole number of voters in the city did not vote upon the question of subscription or no subscription to the stock in the respective railroad companies. The bonds were issued by the defendant to pay its subscription for stock in the two railroad companies hereinbefore named. The title of the act of 14th October, 1870, is "an act to authorize the mayor and council of the city of Rome to subscribe not exceeding $100,000 00 to stock in the Memphis Branch Railroad upon certain conditions, and for other purposes." The 1st section of the act authorizes the subscription to stock in the company not exceeding $100,000 00, and to issue the bonds of the city for its subscription, the interest thereon payable annually. The 2d section of the act provides that the mayor and council shall, in each and every year, until said bonds are paid, provide by special taxation for the raising of a sufficient sum of money to meet the interest on said bonds. The 3d section provides that before said subscription is made, the vote of the citizens of said city shall be taken in accordance with the provisions of the constitution of the state, and provided a majority of said citizens (being the qualified voters thereof,) do approve of said subscription. The 4th section of the act provides that the mayor and council of the city of Rome may subscribe for a like amount of stock in any other railroad that may be projected, which has its terminus in said city, provided the question of subscription or no subscription be first submitted to the citizens of said city, and the subscription be approved by a majority of the qualified voters thereof. The foregoing act of 1870 was amended by the act of 1st of December, 1871, and is entitled an act to amend an act to authorize the mayor and council of the city of Rome to subscribe not exceeding $100,000 00 of stock in the Memphis Branch Railroad upon certain conditions, and for other purposes. The 1st section of the amended act strikes out the word "annually" in the original act, and inserts the word "semi-annually." The 2d sec-

tion of the amended act declares that all the provisions and stipulations of said amended act, and the amendments thereto, be of full force in relation to the subscription of the city of Rome of $100,000 00 to the North and South Railroad. The original act and the amendment' thereto, are to be construed together as one act. It is contended that there is nothing in the title of either of the acts in relation to the issuing of bonds, or as to the subscription to stock in the North and South Railroad, or as to the payment of interest, and for that reason the acts are unconstitutional and void. In construing this clause of the constitution, to-wit: "Nor shall any law or ordinance pass which contains matter different from what is expressed in the title thereof," this court held, in *Martin vs. Broach,* 6 *Georgia Reports,* 21, that where the title of the act specifies some of the objects for which the act was passed, and contains this general clause, "and for other purposes," portions of the act not specially indicated in the title, are nevertheless good, under this general clause, and we adhere to this ruling of the court in construing these words in the constitution of 1868, so far as it regards the title of the act. The title of the act under consideration, and the amendment thereto, contains the words "and for other purposes," and therefore it is not void, because it contains matter different from what is expressed in the title thereof.

6. The constitution of 1868 has in it an additional clause that was not in the old constitutions, to-wit : "Nor shall any law or ordinance pass, which refers to more than one subject matter." Does the act of 1870 and the amendment thereto, refer to more than one subject matter? What is the subject matter of the original and amended act? The subject matter, is the subscription of stock to railroads by the mayor and council of the city of Rome, including the Memphis Branch Railroad, or any other railroad that might be projected and have its terminus in that city, and when the amended act authorized the subscription to the North and South Railroad, that had reference to the same subject matter, to-wit: subscription to the stock of a railroad specially named, which had

Black *et al. vs.* Cohen *et al.*

its terminus in the city, as it appears from the act incorporating it. The issuing bonds to pay the authorized subscription to stock in the named railroads, and providing for the payment of the interest thereon, has reference to the same subject matter of the subscription to stock in the two railroads named, and necessarily connected therewith, and germane thereto.

7. The authority to the mayor and council to subscribe for stock in the respective companies, necessarily implied that it was to provide the means to pay for it; paying for the stock subscribed, was the most important part of the whole subject matter. Courts will not declare an act of the general assembly unconstitutional and void, unless it is plainly and manifestly so. The two or more subjects matter *referred to* in the act, not *contained* in it, to make the act unconstitutional and void for that reason, should be so distinct and clear, as to leave no doubt upon the mind of the court, as, for instance, if an act to subscribe to stock in a railroad company, should refer in the body of it, to a subscription for stock in a gold mining company, that would be two distinct subjects matter referred to in the same act, which the constitution prohibits, but that is not the case now before us, nor anything like it; the whole subject matter referred to in the body of the act of 1870 and the amendment thereto, is in relation to the subscription to stock by the mayor and council of the city of Rome in two named railroads having their *termini* in that city, and providing the means of payment therefor. If there was anything said in the opinion of this court, in the case of *The Board of Public Education vs. Barlow,* 49 *Georgia Reports,* 232, seemingly in conflict with our present ruling, we modify what was said in that case, upon a more full and deliberate examination of the question.

8. On the 22d September, 1870, the general assembly passed an act to authorize the mayor and council of the city of Rome to issue bonds, and borrow money for purposes therein specified. By the first section of that act the defendant was authorized, in its corporate capacity, to negotiate a loan and

borrow a sum not exceeding $100,000 00, to be used in bonding its present debt and in building and establishing water works in said city, and for other purposes mentioned therein, for the improvement of the city. The second section authorized the issuing of the bonds of the city, provided for the payment thereof, that the same should not be sold for less than ninety cents in the dollar, and that before said bonds should be issued for public improvements, as specified in the act, the question should be submitted to and receive the sanction of the majority of the qualified voters of the city. It was under this act that what is called the water works bonds were issued by the defendant. The complainants allege that these bonds were issued without complying with the provisions of the act, that the question of erecting water works did not receive the sanction of a majority of the qualified voters of the city, and that the bonds were negotiated and sold for less than ninety cents in the dollar. The defendant, in its answer, admits that a small portion of the bonds were sold for less than ninety cents in the dollar, but says that the balance thereof were sold at ninety cents, and that the question of " water works" or " no water works" was twice submitted to the legal voters of the city, and that each time a majority of those voting voted in favor of water works. By the constitution of 1868 the general assembly may permit the corporate authorities of any town, or city, to take stock in, or contribute to, any railroad, or work of public improvement, or engage in such work, after a majority of the qualified voters of such town or city, voting at an election held for the purpose, shall have voted in favor of the same, but not otherwise. The question is, whether the constitution requires that a majority of *all* the qualified voters of a town or city should vote upon the question submitted, or whether a majority of those *voting* at the election is sufficient. In our judgment, the constitution only requires a majority of those *voting* at the election. Such are the plain words of it, and doubtless that was its true intent and meaning; otherwise, it would have said a majority of *all* the qualified voters of such town or city,

Black *et al.* *vs.* Cohen *et al.*

instead of saying, after a majority of the qualified voters of such town or city *voting* at an election held for the purpose. Every qualified voter in the city of Rome had the privilege of voting upon the question, at the time the election was held, or not voting, just as he pleased; and if he did not vote when he had the opportunity to do so, the presumption is that he was willing to abide the decision of those who did vote. What we have said in relation to the vote of a majority of the qualified voters of the city voting at the election in regard to the water works bonds, is also applicable to the election held as to the subscription for stock in the Memphis Branch railroad and the North and South railroad.

In our judgment, the defendant had the lawful authority to issue the bonds complained of in the complainants' bill, and if the same were irregularly issued by the defendant, or if any of them were negotiated and sold for less than ninety cents in the dollar, the defendant is bound to pay them, and the interest thereon to the innocent holders thereof. In support of our judgment, we cite the following authorities: Knox *vs.* Aspinwall, 21 Howard's Rep., 544; Bissell *vs.* The City of Jeffersonville, 24 Howard's Rep., 298; Mercer County *vs.* Hacket, 1 Wallace's Rep., 94; Gilspeke *vs.* Dubuque, 1 *Ibid.*, 203; Supervisors *vs.* Schenck, 5 *Ibid.*, 781; City of Lexington *vs.* Butler, 14 *Ibid.*, 294; Moran *vs.* The Commissioners of Miami Co., 2 Black's Rep., 729.

The application having been made in this case to a court of equity to restrain the defendant from levying and collecting an extraordinary tax for the payment of the interest due on the bonds, the question naturally presents itself, where were the complaining citizens of the city of Rome, when the stock subscription to the railroad companies was made and the bonds issued by the defendant in payment therefor? Why did not they interfere *then* to restrain the defendant from subscribing for the stock and issuing the bonds of the city, if the defendant was violating its duty, as they now allege? Why remain quiet and passive until the bonds had been issued and sold, and were in the hands of innocent holders thereof? In view

of the facts of this case, it may well be questioned whether a court of equity should not hold that they are now estopped from setting up the grounds of their complaint at·this late day, as against the innocent holders of the bonds; at any rate, a court of equity will not lend a very willing ear to their complaints now.   We reverse the judgment of the court below in granting the injunction restraining the levying and collecting any extraordinary tax to pay the interest coupons attached to the bonds issued by the mayor and city council of Rome to pay the subscription to stock in the North and South Railroad Company of Georgia, and the sixty-five bonds issued to redeem what is called city currency, numbered from one to sixty-five, inclusive, and affirm the judgment of the court in refusing the injunction as to all the other bonds specified therein.

Let the judgment be so entered on the minutes of this court.