Adams *et al.*, trustees, *vs.* The Mayor and Council of the City of Rome.

---

DAVID ADAMS *et al.*, trustees, plaintiffs in error, *vs.* THE MAYOR AND COUNCIL OF THE CITY OF ROME, defendant in error.

1. Where the charter of a city confers on the mayor and council power to make all contracts, in their corporate capacity, which they may deem necessary for the welfare of the city, and declares them capable in law to purchase, hold, receive, enjoy, possess and retain to them and their successors, for the use and benefit of the city, in perpetuity, or for any term of years, any estate, or estates, real or personal, lands, tenements, hereditaments of what kind or nature soever, within the limits of the city, and to sell, alien, exchange or lease the same, or any part thereof, or convey the same, or any part thereof, in any way whatsoever, the mayor and council, after completing the erection of corporate water-works, within the city, with the proceeds of municipal bonds, lawfully issued and negotiated to raise money for that purpose, may make a valid contract of mortgage upon such water-works to secure payment of the outstanding bonds, principal and interest.

2. Though the bonds were issued under a special act of the general assembly, which declared all the property within the city, real and personal, subject to taxation, *pro rata,* for the payment of the interest and the redemption of the bonds, and gave the mayor and coun-

cil authority to levy and collect, in addition to the general tax, a sufficient annual tax, not exceeding one-half of one per cent., to meet the interest as it fell due, and provide a sinking fund, which should finally extinguish and discharge the principal, and though the holders of the bonds received them with no other express provision for payment than this act afforded, the mayor and council were not confined to an exercise of the taxing power as a means of liquidation, but might, in virtue of the broad powers granted in the charter, devote thereto, by contract of mortgage or sale, the water-works themselves.

3. Because the special act required, as a condition precedent to issuing the bonds, a consent vote by a majority of the qualified voters of the city, it would not follow that any vote of the citizens would be necessary to enable the mayor and council to execute the mortgage.

4. From the existence of the power to mortgage, and its due exercise, the right to foreclose on a breach of the condition, is a necessary legal consequence; but, for good cause shown by answer in the nature of equitable plea, it might be competent to so mould the order of sale as not to precipitate a disposition of the property for arrearages of interest merely, without affording reasonable time for raising an adequate fund by taxation, in the mode authorized by the special act under which the bonds were issued.

Municipal corporations.    Mortgage.    Powers.    Bonds. Tax.    Before Judge UNDERWOOD.    Floyd Superior Court. January Adjourned Term, 1877.

Adams and J. W. Bones, as trustees, filed their petition for the foreclosure of a mortgage given by the mayor and council of the city of Rome, on the water-works in that city, to secure the payment of certain bonds and the coupons thereto attached.    Default in the payment of the interest had been made, and this proceeding was instituted under a request from certain bondholders, by the trustees under the mortgage.    Rule *nisi* issued, and in answer thereto the respondent set up the following objections:

1. Because the bonds and coupons sought to be secured were issued without authority of law, and contrary to the provisions of the act of September 28th, 1870, under which it is claimed they were issued, in this, that a sanction of a majority of the qualified voters of Rome was never obtained. On the 5th day of November, 1870, when the matter was

Adams *et al.*, trustees, *vs.* The Mayor and Council of the City of Rome.

referred to a vote of citizens, there were not less than four hundred qualified voters in Rome, only one hundred and eighteen of whom voted—ninety-six for, and twenty-two against the proposition, as will appear by reference to the report of the managers of said election, entered upon the minutes of council. For this reason respondent says that said bonds and coupons are null and void, and the city not liable thereon.

2. Because the property embraced in the mortgage consists alone of what is known and described therein as *The Rome City Water- Works*, built by the city at great expense, under the provisions of its charter, for the purpose of protecting the property of its citizens from loss and destruction by fire, and also for the promotion and preservation of the health of the people residing in its limits, all of which purposes were, in the opinion of the council, necessary to the general good of the city, and eminently secured in the construction of the water-works, and all of which would be seriously endangered, if not totally defeated, by a sale and wresting them from the control of the city authorities. For this reason respondent says that this property was not, and is not the proper subject of a mortgage, nor of a sale under the foreclosure thereof.

3. Because even if the bonds and coupons were properly issued, and constitute a valid debt against the city, the mayor and council could not make a valid sale, nor create a lien by mortgage, without the sanction of a majority of the qualified voters of the city, or at least without the approval of a majority voting at an election ordered for that purpose ; the same authority was necessary to justify a sale of the property, or the creation of the lien, which was required to authorize the construction of the works.

4. Because the public interest would be greatly prejudiced by a sale under the foreclosure, and the property seriously sacrificed at a price far below its value in view of the purpose for which constructed by the city ; and it

Adams *et al.*, trustees, *vs.* The Mayor and Council of the City of Rome.

would contravene a public policy which looks to the promotion of a public interest.

5. Because the general laws of the land, and the particular law under which it is claimed these bonds and coupons were issued, prescribe a different mode of enforcing the collection of these debts, to-wit : by taxation, through the municipal officers of the city. The means thus offered and secured to bondholders are ample for this purpose, and no other means can be resorted to. For this reason respondent denies the authority of this court to entertain jurisdiction in this proceeding.

To this answer petitioners demurred. The demurrer was overruled, and they excepted.

The petition and rule *nisi* were then dismissed, and they again excepted.

O. A. Lochrane ; Smith & Branham ; E. A. Angier ; Hamilton Yancey, for plaintiffs in error.

Alexander & Wright, for defendant.

Bleckley, Judge.

1. Touching the power to contract and to acquire and dispose of property, the charter of the city of Rome has the extent indicated in the first head-note of this opinion. See acts of 1847, §§5 and 13, pamph. pp. 51, 52, 53. No further legislation was needed to enable the mayor and council, in their discretion, to have water-works erected. So it was ruled by this court in 28 *Ga.*, 50. In 19 *Ib.*, 471, an unlimited power to contract, granted to the mayor and council of Columbus, was decided to be sufficient to warrant the corporation in paying its debts by parting with railroad stock of which the city was owner. In the power to contract without limitation, a power to make sale of the corporate property for the payment of debts was thought to be included. A mortgage is not a higher class of contract than a sale, but rather, if any difference, a lower class. We can entertain no doubt

Adams *et al.*, trustees, *vs.* The Mayor and Council of the City of Rome.

that a contract of mortgage may be made under a grant of power to the mayor and council to make *all* contracts which they may deem for the welfare of the city. Besides this, there is an express authority to " sell, alien, exchange, lease, convey in any manner whatsoever." If the power to sell and convey stood alone it would probably comprehend the power to mortgage. 2 *Kelly*, 404 ; 3 P. Wms., 9 ; and see 1 Watts, 385. It was argued that some restriction on the powers of the mayor and council to dispose of the public property ought to be considered as implied from the nature of the property, and from the necessities of the public to be served by its use. Doubtless there is such an implied restriction, but its range is, and ought to be, exceedingly limited. The general rule is, that the mayor and council shall exercise their discretion as to what the city of Rome shall hold or not hold as a part of its corporate property. So, too, in respect to when its ownership shall begin and when it shall cease. An exception would prevail as to those things which are, by universal usage, common to all cities, such as the public streets, and as to those things, if any, which the particular corporation may be required by statute to have permanently. To have and keep water-works for the use of the city has not been made obligatory upon the mayor and council of Rome. The mayor and council could establish them at pleasure and discontinue or dispose of them at pleasure. Water-works are, in that city, upon the footing of ordinary corporate property, and as subject to the discretion of the mayor and council in respect to sale ·or mortgage, as would be a single cistern for water-supply, a fire-engine, a market-house, a public park or a city-hall. It might be very unwise and improvident to part with any of these with or without a view of supplying their places with others of like kind ; but when the same charter that confers power to acquire property, confers power also to sell, alien, exchange or lease the same, or any part thereof, or convey the same, or any part thereof, in any way whatsoever, and to make all contracts deemed necessary for the welfare

Adams *et al.*, trustees, *vs.* The Mayor and Council of the City of Rome.

of the city, it is difficult to deny the power of disposition without at the same time denying the power of acquisition.

2. Though the charter of the city of Rome, as we have seen, was broad enough to empower the mayor and council to erect water-works, a special act of the legislature was passed in 1870, (pamph. p. 475) authorizing the issue of municipal bonds to raise money with which to pay for them, on condition that a majority of the qualifield voters of the city should, at an election held for the purpose, vote in favor of the measure. To engage the credit of the city even by negotiable bonds, a special act, in addition to the broad terms of the charter, was perhaps unnecessary. 52 *Ga.*, 621. Compare 45 *Ib.*, 323 ; 19 Wall., 468. Still, the special act was passed, and under it the bonds were issued and negotiated. With the proceeds of the bonds the water-works were paid for. The holders of bonds received them without other express security than that afforded by the provisions of the special act. These provisions were, in substance, that all the property within the city, real and personal, should be subject to taxation, *pro rata*, for the payment of the interest and the redemption of the bonds, and the mayor and council were authorized to levy and collect, in addition to the general tax, a sufficient annual tax, not exceeding one-half of one per cent., to meet the interest as it fell due, and provide a sinking fund for the final extinguishment and discharge of the principal. It is argued in behalf of the city, that the means of liquidation thus provided for by law are exclusive, and that, for that reason, the mayor and council could not devote the water-works, or any other property, to the payment of the interest or to the discharge of the principal of the bonds. We think otherwise. The special act was not intended, as it seems to us, to narrow or cut down the charter in respect to the power of disposing of the corporate property, or of applying the same to the corporate indebtedness by any contract deemed by the mayor and council necessary for the welfare of the city. Since this case was decided, the supreme court of the

Adams *et al.*, trustees, *vs.* The Mayor and Council of the City of Rome.

United States, in The United States *vs.* The County Court of Clark county, has made a decision bearing in some degree on the subject.

3. A further point made in behalf of the city is, that as the special act of 1870 required a consent vote by a majority of the qualified voters, as a condition precedent to issuing the bonds, a similar vote, or at least some vote of the citizens, would be necessary to enable the mayor and council to mortgage the water-works. We cannot discern any connection between the proposed conclusion and the premises from which it is sought to be drawn.

4. A supposed difficulty is urged in respect to enforcing legal process against municipal property by levy and sale. It may be conceded that a general judgment upon the bonds or the coupons could not be thus enforced, for the reason that what property the city should retain, and what devote to the payment of its debts, is not a matter to be determined by a levying officer, or even by a court, but only by the mayor and council. In the case of a mortgage, however, this high prerogative is, in fact, exercised by the mayor and council. In executing the mortgage, the property on which it operates is deliberately set apart and consecrated to the payment of the debt or debts secured. From the power to mortgage and its due exercise, the right to have a judgment of foreclosure, on breach of the condition, follows as a legal consequence. Code, §§3962, 3968. A most vain and empty thing would be a mortgage without any means of bringing the property to sale. We will not say that the court, for good cause shown by answer in the nature of equitable plea, could not mould the order of sale so as not to precipitate a sale for arrearages of interest without affording reasonable time for raising, by taxation in the mode authorized by the special act, an adequate fund for clearing arrearages and keeping down accruing interest. There was, however, no answer presenting equitable matters in the case. In our opinion the court erred in refusing to grant a rule absolute and in dismissing the petition.

Cited by counsel for the mortgagees: (Validity of the bonds) 52 *Ga.*, 621; 57 *Ib.*, 370; 18 Amer. R., 253; Dillon on Municipal Bonds, *passim ;* (power to mortgage) Charter of Rome, § 5; 28 *Ga.*, 50; 2 Coldwell, 645; 15 Iowa, 394; 31 Penn., 183; 21 How., 424; 17 Barb., 378; 15 *Ib.*, 238; 3 Camp., 238, 242; City of Memphis *vs.* Fisher, Law and Eq. Reporter, May 12, 1877; 43 Ill., 424; 1 Rawle, 131; 6 Am. Law, 413; Sugden on Pow., 1st Amer. ed., 478; Powell on Mort., ed. of 1828, pp. 81, 82, 161; 6 Texas, 102; Kent's Com., mar. p. 148; 2 Kelly, 383; Cooley C. L., 240 to 253; 3 Hill, 531; 2 Denio, 433; 3 McL., 580; 15 Barb., 238; 64 N. C., 218, 225; 2 Cal., 524; 4 *Ib.*, 127, 193; 5 *Ib.*, 306; (levy and sale) 15 Cal., 586: 6 La., 572; (cumulative remedy) 12 Conn., 528; 5 Cowen, 165; 13 Maine, 371; 58 *Ga.*, 534.

Cited by counsel for mortgagor: (Taxation exclusive—no power to mortgage) Dillon M. C., §§273, 653, 686–7, 784; 1 Term R., 118; 6 Rich. Law., 404; 9 Wend., 571; 6 Ind., 403, 249; 4 *Ib.*, 435; 7 *Ib.*, 35; 9 *Ib.*, 283; 43 Penn., 400; 20 Cal., 102, 108–9; 35 Mo., 341; 2 Dutch., 398; 6 Mass., 40; 24 Miss., 243; 3 Head, 596; 15 Wis., 37; 16 *Ib.*, 288; 5 Ohio, 520; 9 Ham., 543; 4 Ohio, 685; 2 Porter, 296; 37 How. Pr. R., 158–9; (trust—no power to mortgage) acts of 1870, pp. 485–6; Dillon M. C., §§64, 65, 93, 94, 381, 396, 444 to 447, 614, 615, 727–37; 3 B. Mon., 440; 7 *Ib.*, 681; 8 Dana, 50; 16 Barb., 107; 17 Wall., 328; (levy and sale) Her. on Ex., §§364–5; Freem. on Ex., 126; 28 Pa., 210; 60 *Ib.*, 27; 36 *Ib.*, 126; 1 La. An., 435; 7 *Ib.*, 148; 27 Vt., 71; 23 *Ib.*, 93; 12 Ind., 620; 25 Ill., 595; 31 N. Y., 164; 64 N. C., 224; 15 Cal., 530; 24 *Ib.*, 585; 36 *Ib.*, 220; 21 *Ib.*, 668; 11 Mo., 59; 18 *Ib.*, 277; 24 How., 383; 19 Wall., 660; 37 How. Pr. R., 499; 10 Cal., 405, 410; 8 *Ib.*, 57, 58; 34 *Ib.*, 290–1; 15 *Ga.*, 309; 28 *Ib.*, 50.

Judgment reversed.