## Trexler v. Commonwealth, Department of Transportation

*Lewis R. Long,* for petitioner.

*Stuart M. Bliwas,* Assistant Attorney General, for Commonwealth.

WIEAND, J., January 29, 1974.—The petition presently before the court requests a determination of the amount of compensation due for delay in payment to Stanley C. Sunday, the owner of a leasehold estate which was condemned for highway purposes by the Commonwealth of Pennsylvania.

On November 20, 1970, the Commonwealth filed a declaration of taking for a tract of land adjacent to Legislative Route 39031 (Airport Road) at its intersection with Route 22, in Hanover Township, Lehigh County. The tract was owned by John J. Trexler and leased to Stanley C. Sunday for the operation of a diner. Sunday, however, had sublet the diner to George Gubich, who was in possession of the diner and conducting a restaurant business on the date of condemnation. This business was discontinued and the diner vacated on or about January 1, 1971, although the keys were not physically surrendered until February 2, 1971. Sunday received no rent for the premises after December, 1970.

On April 2, 1971, the Commonwealth, with leave of court, deposited in the office of the prothonotary the sum of $140,000, which the condemning body estimated to be the total compensation payable to the owner, the lessee and the sublessee. A schedule of distribution attached to the Commonwealth's petition identified the various interests but did not attempt to apportion the moneys paid into court.

On April 28, 1971, Trexler and Sunday filed a joint petition by which they obtained a rule to show cause why the sum of $140,000 should not be distributed by paying $56,000 to Sunday and $84,000 to Trexler. The rule was served upon Gubich and upon the condemnor. On May 21, 1971, the condemnor filed an answer to the Trexler-Sunday petition and objected to a distribution which did not include the subtenant. On August 1, 1971, Gubich executed a release and agreed that moneys deposited with the court should be distributed between Trexler and Sunday. On January 5, 1972, Sunday filed a motion for a summary judgment which, if granted, would have directed the distribution previously requested. That motion was never argued, however, and neither party took the initiative in pursuing the request for distribution of the funds on deposit with the court.

On July 18, 1972, a court-appointed Board of View entered an award against the condemnor in the total amount of $236,000, which it apportioned by directing payment of $102,000 to Sunday and $134,000 to Trexler. The Commonwealth took an appeal from this award, and, following trial by jury, a verdict was returned assessing total damages at $185,000. Of this amount, the jury's verdict awarded to Sunday the amount of $65,000 and to Trexler the sum of $120,000. No post trial motions were filed, and on January 26, 1973, Sunday caused a judgment to be entered on the verdict.

In May, 1973, the Commonwealth tendered to Sunday a check for $11,587.50 upon the condition that Sunday accept the same "in full satisfaction of all claims arising from the Condemnation docket . . . except for possible detention damages due and owing." This assumed that the balance of the verdict would be paid from moneys previously deposited by the condemnor. Sunday declined to accept the check on the conditions imposed by the Commonwealth.

Meanwhile, on February 22, 1973, Sunday had filed a petition requesting the court to determine the amount of the damages due him for delay in payment. It is this petition which is presently before the court for determination. It should be remembered, however, that the Trexler-Sunday petition requesting distribution of moneys deposited in court, a petition which the Commonwealth initially opposed, is also unresolved.

With respect to the latter petition, the moneys deposited with the court should be distributed between Trexler and Sunday proportionately according to the verdict. This means that Sunday will receive $49,190 from the moneys on deposit in the prothonotary's office. An order will be entered accordingly.

Our determination of damages for delay in payment is controlled by section 611 of the Eminent Domain Code of June 22, 1964, P. L. 84, 26 PS §1-611. It is there provided as follows: "The condemnee shall not be entitled to compensation for delay in payment during the period he remains in possession after the condemnation . . . Compensation for delay in payment shall, however, be paid at the rate of six per cent per annum from the date of relinquishment of possession of the condemned property by the condemnee . . . Provided, however, That no compensation for delay shall be payable with respect to funds paid on account, or by deposit in court, after the date of such payment or

deposit. Compensation for delay shall not be included by the viewers or the court or jury on appeal as part of the award or verdict, but shall at the time of payment of the award or judgment be calculated as above and added thereto. There shall be no further or additional payment of interest on the award or verdict."

Although keys to the diner were not delivered to the condemnor until February 2, 1971, it is clear that the diner business was terminated on or about January 1, 1971, and that agents of the Commonwealth began showing the diner to prospective purchasers before the keys were delivered. We conclude, therefore, that damages for delay in payment are recoverable from and after January 1, 1971.

The Eminent Domain Code is quite clear in establishing that damages for delay in payment shall not be payable with respect to moneys paid into court. Although section 522 makes an exception where improper notice of the payment into court is given, that exception has no application to the instant case.

Sunday argues that an exception should be made because the proposed schedule of distribution required by section 522 of the Eminent Domain Code, supra, failed to apportion the sum of $140,000 among the owner and the several tenants. A similar argument was made and rejected in In re Condemnation of 146 Columbia Avenue, Vandergrift, Penna., 52 Westmoreland 303. The court there said, at page 307: "A payment into court amounts to a constructive payment to the owner and all other parties who might have an interest in the fee. The money represents the property taken and it is the thing which the Eminent Domain Code substitutes for the land. Upon deposit, the court takes control of the money and under the terms of the Code, can pay it to those who are entitled to it."

Again, at page 308, the court said: "At any time, the interested parties, namely, landlord and tenant, could have received the immediate payment of the amount deposited with the court. It was a problem between the two interested parties as to how much each one should have received . . . The condemnee, upon petition, could have withdrawn the money paid into court and it would have been credited against the final award. Under these circumstances, we . . . see no reason why the condemnor should be penalized simply because the owner failed to ask for withdrawal of the fund, or because there was a failure on the part of the owner and the tenant to make an equitable apportionment of the just compensation."

Sunday complains that he and Trexler did agree to a division of the deposit and did present a petition to the court for leave to withdraw moneys in accordance therewith. He complains that these efforts were frustrated by the Commonwealth's opposition to the request. This opposition was based upon a failure on the part of Trexler and Sunday to make provision for the interest of Gubich, the subtenant. Subsequently, the objection was remedied by Gubich's execution of a release and his consent to the proposed distribution. After this deterrent was removed, however, the petition was never pursued properly, and the matter was not brought before the court for final determination. Under these circumstances, we perceive no valid basis for creating an exception to the limitation imposed by the statute. We hold, therefore, that the petitioner is not entitled to damages for delay in payment with respect to moneys paid into court.

The condemnor's failure during the foregoing proceedings to agree to an alternate apportionment of the moneys deposited is not wholly without consequences. Thus, we are unable to accept its efforts to

have Sunday and Trexler now apportion the deposited moneys according to a schedule which fails to conform with the ratio established by the verdict of the jury. According to such a ratio, Sunday is entitled to $49,190 from the moneys held by the court. The Commonwealth, therefore, must pay him an additional $15,810. It follows from this that the Commonwealth cannot properly contend that its liability for delay damages terminated when its check for $11,587.50 was tendered to Sunday. The amount of that check was inadequate, and Sunday properly refused to accept it in full satisfaction. Section 611 of the code is applicable, therefore, and requires payment of damages for delay up to the time of payment.

The calculation remains to be made. From January 1, 1971, to April 2, 1971, damages must be calculated on the total amount of the verdict. From April 2, 1971, to the date of this order, the calculation must be based on the amount of $15,810. In agreement with this reasoning our calculation indicates that Stanley Sunday is entitled to damages for delay in the amount of $3,662.70.

## ORDER

Now, January 29, 1974, the petitioner, Stanley Sunday, is awarded damages in the amount of $3,662.70 against the Commonwealth of Pennsylvania for delay in paying to him the value of his leasehold estate.

The prothonotary is hereby authorized to pay and distribute to the said Stanley Sunday from moneys deposited by the Commonwealth of Pennsylvania the sum of $49,190, payment of which shall constitute a pro tanto satisfaction of the judgment entered in favor of the said Stanley Sunday in the above captioned proceedings.