In re CONDEMNATION BY the PENN-SYLVANIA TURNPIKE COMMISSION OF 25.806 ACRES IN FEE SIMPLE, IN NEW BEAVER BOROUGH, LAW-RENCE COUNTY, Commonwealth of Pennsylvania, for Construction of the Beaver Valley Expressway.

Helen R. Edwards, Appellant.

Commonwealth Court of Pennsylvania.

Argued Nov. 16, 1998.

Decided Jan. 7, 1999.

Thomas J. Dempsey, Pittsburgh, for appellant.

Samuel P. Kamin, Pittsburgh, for appellee.

Before FRIEDMAN, J., LEADBETTER, J., and JIULIANTE, Senior Judge.

FRIEDMAN, Judge.

In this eminent domain case, we are asked to consider the impact of a State Mining Commission proceeding, in which the parties reached a settlement regarding the value of a condemned property's support estate,[1] upon the subsequent distribution of estimated just compensation connected to the taking of that property.

1. Pennsylvania recognizes three separate estates in land which can be held in fee simple separate and distinct from each other: (1) the surface estate; (2) the mineral rights estate; and (3) the support estate. *Captline v. County of Allegheny*, 662 A.2d 691 (Pa.Cmwlth.1995).

2. The Edwardses held title to, and owned the surface of, the property; Liperote claimed a coal interest in the property by virtue of a recorded agreement; and Medusa claimed a coal interest in the property by a reservation of minerals recorded in the Lawrence County Office of the Recorder of Deeds.

3. Act of June 22, 1964, Special Sess., P.L. 84, *as amended*, 26 P.S. §1–522. We note that, in its petition, the Turnpike Commission states that its request to pay damages into court is made pursuant to section 521 of the Code, 26 P.S. §1–521; however, the request clearly falls under section 522 of the Code, and, in its brief, the Turnpike Commission cites the correct provision.

4. Pursuant to section 407(a) of the Code, a condemnor is entitled to take possession of condemned property only after payment of, or a

This case originated on March 29, 1990, when the Pennsylvania Turnpike Commission (Turnpike Commission) filed a Declaration of Taking to acquire 25.806 acres of land needed for the construction of the Beaver Valley Expressway. Roy D. Edwards and his wife Helen R. Edwards, (together, the Edwardses), held title to the subject property as tenants by the entireties. In addition, Liperote Coal Sales, Inc. (Liperote) and Medusa Portland Cement Company (Medusa) claimed interests in the property.[2] Because the Turnpike Commission could not determine the proper distribution of damages between these condemnees, it petitioned the Court of Common Pleas of Lawrence County (trial court), pursuant to section 522 of the Eminent Domain Code (Code),[3] 26 P.S. §1–522, for permission to deposit the estimated amount of just compensation into court.[4] (R.R. at 7a–10a.) On December 11, 1990, the trial court issued an order directing the Turnpike Commission to deposit into court the sum of $77,500, representing the Turnpike Commission's estimate of just compensation due to the condemnees, with the money to be placed in an interest bearing account until the trial court could determine the proper distribution of the funds. (R.R. at 13a.)

written offer to pay to the condemnee, the amount of just compensation as estimated by the condemnor. 26 P.S. §1–407(a). If, as here, the condemnor desires to obtain possession of the subject property but cannot ascertain the party entitled to compensation, the condemnor may satisfy its obligation under section 407(a) by paying estimated just compensation into court, along with a schedule of proposed distribution, for subsequent distribution by the court to the persons entitled thereto. 26 P.S. §1–522.

As required by section 522 of the Code, the Turnpike Commission attached a Proposed Schedule of Distribution (Schedule) to its Petition to Deposit Estimated Just Compensation into Court, listing the Edwardses, Liperote and Medusa as condemnees. Also listed as condemnees, but not involved in the current proceedings, were Lawrence County Treasurer, Lawrence County Tax Claim Bureau and New Beaver Borough. The Schedule indicated that each of the parties listed was entitled to $1.00 or such other sum that the trial court might see fit to award, up to a maximum of the entire amount of estimated just compensation, i.e., $77,500. (R.R. at 9a.)

Prior to eminent domain proceedings before the Board of Viewers, the parties engaged in proceedings before the State Mining Commission, convened by the trial court to determine the amount and value of coal required to be left in place under the condemned property to provide support for the highway.[5] The condemnees and the Turnpike Commission ultimately settled these proceedings with the Turnpike Commission paying $72,000, to be divided equally among the condemnees, for the surface and mineral rights necessary for such support. (*See* Turnpike Commission's brief, Appendix A, N.T. 1/22/97 at 1–7.) The trial court approved this settlement by order dated January 27, 1997.

On July 3, 1997, after the conclusion of the State Mining Commission proceedings, the condemnation damage claims of Helen R. Edwards (Edwards),[6] Liperote and Medusa came before the Board of Viewers for hearing and a determination of damages due the condemnees as a result of the Turnpike Commission's taking of the subject property. Prior to the hearing, the condemnees entered into a settlement agreement (Agreement) among themselves, which they presented to the Board of Viewers. (R.R. at 53a.) According to the Agreement, Edwards assigned to Liperote and Medusa all of her claims against the Turnpike Commission for surface damages for the taking of the subject property. As part of the consideration for this assignment, Liperote and Medusa agreed that Edwards could withdraw the entire amount of estimated just compensation previously deposited into court by the Turnpike Commission, plus any interest earned thereon.[7] Although the Turnpike Commission was not a party to the Agreement between the condemnees, the terms of the Agreement were made a matter of record before the Board of Viewers. In fact, the July 3, 1997 transcript of the proceedings indicates that counsel for the Turnpike Commission consented to the Agreement.[8] (R.R. at 23a–24a, 26a–27a, 29a–30a.) However, less than one week later, before Edwards could prepare a formal petition to withdraw the money, the Turnpike Commission indicated that it would not consent to Edwards' withdrawal of all the funds previously deposited by the Turnpike Commission, as provided in the Agreement. Liperote and Medusa remain agreeable to Edwards' withdrawal of these monies.

Edwards then filed a Petition to Enforce Settlement Agreement and Authorize Withdrawal of Monies Deposited in Court (Petition). (R.R. at 17a–21a.) In its Response to this Petition, the Turnpike Commission claimed, *inter alia,* that the $77,500 paid into court represented just compensation for the entire fee simple estate, including both support coal and eminent domain coal rights. The Turnpike Commission alleged that it allocated $41,800 of the total amount to the surface owners and allocated the remaining $35,200 to the owners of the mineral estate.[9] (Response at para. 5.) Thus, the Turnpike Commission consented to Edwards' withdrawal of $41,800, representing estimated

---

**5.** Pursuant to section 1 of the Act of June 1, 1933, P.L. 1409, *as amended,* 52 P.S. §1501, the State Mining Commission has exclusive jurisdiction to determine the amount and value of coal underlying condemned property that is required to be left in place to provide support for the land.

**6.** Edwards claimed damages as the surviving tenant by the entireties; Roy D. Edwards had died on June 21, 1996, and the case caption was amended to eliminate his name.

**7.** On May 7, 1996, on petition of the Edwardses to relieve hardship, the trial court authorized the Edwardses to withdraw $10,000 from the amount paid into court by the Turnpike Commission. Thus, under the Agreement, Edwards was to withdraw the funds deposited into court, less the $10,000 previously paid to her and her husband.

**8.** The Turnpike Commission contends that, although it did not object to the withdrawal of funds, it conditioned its consent upon a review of a formal petition for withdrawal to be presented by the condemnees. While the Turnpike Commission did reserve its final consent pending a formal petition, (R.R. at 27a), counsel for the Turnpike Commission indicated that approval would be forthcoming at that time if the petition accurately reflected the Agreement. (R.R. at 27a.) However, such conditional consent does not bind the Turnpike Commission to the Agreement between the condemnees.

**9.** We note that $41,800 and $35,200 total $77,000, not $77,500.

just compensation for her surface rights; however, the Turnpike Commission contended that, if Edwards were to withdraw *all* the deposited funds, she would obtain a double recovery because she would also receive monies intended to compensate for the property's support estate, a claim that the Turnpike Commission already paid through the $72,-000 State Mining Commission settlement. (*See* Response at para. 16.) Further, the Turnpike Commission asserted that, because the Agreement did not settle the case but merely acted to assign Edwards' claim to the other condemnees, the Turnpike Commission could still face claims from Liperote and Medusa claiming entitlement to some of the money paid into court even after Edwards had totally depleted the funds deposited by the Turnpike Commission as its estimate of just compensation to cover the claims of all condemnees. (*See* Response at paras. 16, 20; R.R. at 36a–37a.) Accordingly, the Turnpike Commission requested that the trial court deny Edwards' Petition or, in the alternative, direct the Prothonotary to pay her only $41,-800.

On December 30, 1997, following argument on Edwards' Petition and the Turnpike Commission's Response, the trial court issued an order directing Edwards to stipulate to her acceptance of only $41,800 or, failing that, have her Petition dismissed.[10] Edwards appeals from that order to this court.[11]

On appeal, Edwards argues that the trial court erred in refusing to distribute to Edwards the entire sum of money paid into court by the Turnpike Commission. Edwards asserts that, once the Turnpike Commission deposited the $77,500 into court as its estimate of the just compensation for all interests, the Turnpike Commission no longer had standing to object to the condemnees' Agreement as to the manner in which the deposited funds should be allocated. Moreover, Edwards points out that, although lacking standing to object to the Agreement, counsel for the Turnpike Commission, in fact, agreed on record before the Board of Viewers that the Turnpike Commission had no

10. Specifically, the trial court order provides:
 After considering the "Petition to Enforce Settlement Agreement and Authorize Withdrawal of Monies Deposited in Court" presented by the Petitioner, Condemnee Helen R. Edwards, and the Answer and supporting brief of the Condemnor, the Pennsylvania Turnpike Commission, the Court enters the following order:
 1. If the Petitioner insists on withdrawing the entire amount of just compensation deposited with the Prothonotary in the sum of $77,-500 plus interest accrued thereon from December 11, 1990, less the sum of $10,000 withdrawn by the Petitioner and her late husband, Roy D. Edwards, by Order of May 7, 1996, then, in that event, the instant Petition is dismissed.
 2. Alternatively, the Petition is granted as follows:
 a). The Petitioner shall be entitled to withdraw the sum of $41,800 of the just compensation amount originally deposited plus interest on that amount, or any portion thereof, which has accrued from December 11, 1990, less the sum of $10,000 paid to Petitioner and her late husband Roy D. Edwards by this Court's Order of May 7, 1996.
 b). Any withdrawal by Petitioner from the just compensation deposited shall be subject to the provisions of 26 P.S. §407.
 3. Within 14 days of notice of this Order, the Petitioner shall file a Stipulation as to her acceptance of Paragraph 2 of this Order. If

Petitioner fails to do so, the instant Petition shall be considered dismissed in its entirety in accordance with Paragraph 1 of this Order. (Appellant's brief at 2–3.)

11. From this December 30, 1997 trial court order, Edwards filed both a notice of appeal to this court, (R.R. at 40a), and a petition for reconsideration with the trial court. (R.R. at 43a–53a.) The trial court denied Edwards' petition for reconsideration by order dated January 27, 1998, (R.R. at 41a), and in a second order dated January 27, 1998, directed Edwards to file a Statement of Matters Complained of on Appeal. (R.R. at 39a.) The trial court then issued an opinion in this case; however, in the opinion, the trial court did not address the merits of Edwards' right to receive all the estimated just compensation but, rather, expressed the belief that its December 30, 1997 order was interlocutory and, thus, Edwards' appeal should be quashed. (Trial ct. op. at 3; Edwards' brief at A–3.) Subsequently, the Turnpike Commission filed a Motion to Quash which Judge Eunice Ross of this court denied, concluding that Edwards' appeal was from a collateral order as defined by Pa. R.A.P. 313 and, thus, was properly before this court. Our scope of review of a trial court decision in an eminent domain case is limited to determining whether the trial court abused its discretion, committed an error of law or whether the findings and conclusions are supported by sufficient evidence. *Captline.*

objection to the arrangement set forth in the condemnees' Agreement. Therefore, Edwards maintains that the trial court was obligated to direct distribution of all deposited monies to Edwards, as agreed to by the three condemnees, even though the Turnpike Commission later withdrew its consent to the Agreement. Finally, Edwards contends that this outcome will not harm the Turnpike Commission because the Turnpike Commission will receive full credit for the $77,500 payment against any future award or verdict. We disagree with Edwards' reasoning.

As support for her position that the Turnpike Commission has no input with respect to distribution of the estimated just compensation deposited into court, Edwards relies on section 407(c) of the Code, which provides:

(c) The compensation paid under subsections (a) and (b) of this section shall be without prejudice to the rights of either the condemnor or the condemnee to proceed to a final determination of the just compensation and the payments heretofore made shall be considered only as payments pro tanto of the just compensation as finally determined. However, *in no event shall the condemnee be compelled to pay back to the condemnor the compensation paid under subsections (a) and/or (b), even if the amount of just compensation as finally determined shall be less than the compensation so paid.*

26 P.S. §1–407(c) (emphasis added).

Edwards notes that in *Condemnation by Redevelopment Authority of City of McKeesport,* 22 Pa.Cmwlth. 390, 348 A.2d 918 (Pa. Cmwlth.1975), (*Appeal of Berger–Kutner*), this court agreed that "payment into court amounts to a constructive payment to the owner and all other interested parties." *Id.*

at 920. Edwards thus reasons that, notwithstanding the Turnpike Commission's current claim that the $77,500 on deposit exceeds the $41,800 allocated for surface damage, the Turnpike Commission cannot prevent distribution of the entire amount to Edwards because, once the Turnpike Commission paid the $77,500 into court, it forever parted with that money under the specific mandate of section 407(c) of the Code. We disagree both with Edwards' reasoning and her reliance on *Appeal of Berger–Kutner.*

Although in *Appeal of Berger–Kutner* we agreed that payment of estimated just compensation into court amounts to a constructive payment to the owner and all interested parties *for purposes of computing delay damages under section 611 of the Code,*[12] 26 P.S. §1–611, we did not consider whether a "constructive" payment by the condemnor under section 522 of the Code triggers application of subsection 407(c) of the Code, thereby allowing a condemnee to retain any compensation "paid," even if it exceeds the amount of just compensation as finally determined. With respect to the latter issue, we can derive guidance from *Trexler v. Department of Transportation,* 63 Pa. D. & C.2d 792 (C.P. Lehigh 1974), a decision of the Court of Common Pleas of Lehigh County which, although not controlling precedent, offers considerable insight to the question now confronting us.

In *Trexler,* the court had to determine who, between the condemnor and the condemnees, had the right to funds previously deposited into court by the condemnor pursuant to section 522 of the Code. In that case, after distributions had been made to the various condemnees,[13] $6,810 of the estimat-

**12.** In *Appeal of Berger–Kutner,* a condemnee sought delay damages based on the condemnor's alleged noncompliance with section 522 of the Code, where the condemnor paid estimated just compensation into court but failed to file an accompanying schedule of proposed distribution. We disagreed that the condemnee had a right to such recovery. We held that the clear language of section 611 of the Code presented an exception to the right of a condemnee to receive delay damages by providing that "no compensation for delay shall be payable with respect to funds paid ... by deposit in court, after the date of such ... deposit." 26 P.S. §1–611. We agreed that pay-

ment into court amounts to a constructive payment to the owner and all interested parties for purposes of computing section 611 delay damages and, thus, releases the condemnor from the obligation to pay delay compensation.

**13.** In *Trexler,* the Commonwealth condemned a tract of land owned by John Trexler and leased to Stanley Sunday for the operation of a diner. Sunday, in turn, sublet the diner to George Gubich, who possessed the diner on the date of the condemnation. Because of the various interests in the real estate, the Commonwealth paid $140,-000 into court as its estimate of the total just

ed just compensation remained on deposit with the prothonotary, and one of the condemnees sought distribution of this amount. However, the court determined that, because the condemnee had already been paid in full for his damages, awarding him the remaining money would bestow upon him a windfall at the expense of the Commonwealth. Similar to Edwards' argument here, the condemnee in *Trexler* had argued that, as between him and the Commonwealth, he was entitled to the money based on section 407(c) of the Code which provides that a condemnee shall not be compelled to repay to the condemnor any compensation previously paid. The trial court disagreed and held that section 407(c) referred only to *payments made* under sections 407(a) or (b), and not estimated just compensation paid into court pursuant to section 522 of the Code. The trial court stated:

> By its own terms, moreover, it is clear that the provisions of section 407(c) are applicable only to compensation *already paid* to the condemnee. The protection afforded the condemnee is that "in no event shall the condemnee be compelled to pay back ... *compensation paid.*" This provision makes it possible for the condemnee to accept payment according to the condemnor's estimate of damages and use it without fear that a subsequently acquired substitute property or business may be subjected to a claim for reimbursement of overpayments made by the condemnor. This cautionary provision was not intended to prohibit the court from

making just distribution of surplus moneys deposited with it.

*Trexler,* 36 Leh. L.J. at 175–76 (emphasis added); (Appellee's brief, Appendix B.) Because the condemnees had been paid in full, the trial court ordered the remaining money be returned to the condemnor Commonwealth as rightful owner.

The result in *Trexler* is consistent with the clear language of section 522 of the Code which specifically limits distribution of estimated just compensation paid into court *"to the persons entitled thereto."* 26 P.S. §1–522 (emphasis added). Here, the Turnpike Commission contends that Edwards *is not entitled* to distribution of the *entire* amount remaining on deposit.[14] If the trial court agrees, as it apparently does here, then, contrary to Edwards' contention, the trial court not only has no duty to direct such distribution, but has no authority to do so. Further, we note that, if Edwards is permitted to withdraw the entire amount on deposit, section 407(c) of the Code will act to prohibit reimbursement to the Turnpike Commission, even if it eventually is shown to be an overpayment. Thus, by limiting Edwards' distribution to estimated just compensation for the condemnees' remaining property interest, the trial court prevented a potential double recovery.

 The underlying principle of the Code is to place a condemnee in as good a financial position as if his property had not been taken. *United States v. Reynolds,* 397 U.S. 14, 90 S.Ct. 803, 25 L.Ed.2d 12 (1970).

compensation payable by virtue of the condemnation; the accompanying schedule of distribution identified the condemnees but made no attempt to apportion the deposited amount among them. Shortly thereafter, Trexler and Sunday sought distribution of these funds in accordance with an agreement between the two; however, the Commonwealth opposed the distribution because it did not consider Gubich's interest. Although Gubich's claim was later settled, Trexler and Sunday did not pursue distribution from the fund and it remained pending.

In the meantime, a jury assessed damages for Trexler and Sunday. The court then directed a distribution to Sunday from the monies previously paid into court based upon the ratio Sunday's verdict bore to the total damages, thereby satisfying the award made in Sunday's favor. In a separate dealing, Trexler accepted from the Com-

monwealth a payment in satisfaction of its damage award, and Trexler subsequently withdrew the proper amount from the funds paid into court by the Commonwealth.

14. The Turnpike Commission maintains that, although not paid in full, the condemnees have received partial payment of their just compensation through the settlement of the State Mining Commission claim in the amount of $72,000 for the property's support estate. Therefore, the Turnpike Commission contends that the condemnees are only entitled to receive compensation for their remaining interest in surface and eminent domain coal, estimated by the Turnpike Commission at $41,800, and that distribution of the entire $77,500 to Edwards could result in a windfall for her.

By the same token, a condemnee is not entitled to more than is required to make him whole. *Township of Chester v. Department of Transportation*, 495 Pa. 369, 433 A.2d 1353 (1981). In section 602 of the Code, just compensation is defined as "the difference between the fair market value of the condemnee's entire property interest immediately before the condemnation and as unaffected thereby and the fair market value of his property interest remaining immediately after such condemnation and as affected thereby, and such other damages as are provided in this code." 26 P.S. §1–602(a). Thus, estimated just compensation, by definition, should include the condemnee's entire property interest, including the right of support. *See Captline*. Here, the Turnpike Commission asserts that only $41,800 of the funds deposited as estimated just compensation were allocated to the surface interests of the property and the remainder was allocated for the support estate. The trial court apparently credited this assertion, resolving the issue in favor of the Turnpike Commission and permitting Edwards to withdraw only the $41,800 allegedly allocated for those interests of the condemnees not addressed in the proceeding before the State Mining Commission.

Evidentiary conflicts and questions of credibility are for the trial court to resolve. *Denes v. Pennsylvania Turnpike Commission*, 547 Pa. 152, 689 A.2d 219 (1997).

■ Because the support estate is recognized as part of the entire interest in the subject property, and because the $72,000 represents damages for the loss of that support estate, we agree that the condemnees received part of the just compensation due them for the taking of the subject property in the State Mining Commission settlement.[15] Thus, drawing on the rationale in *Trexler*, we agree that the trial court did not abuse its discretion or commit an error of law by limiting Edwards' distribution to the amount of estimated just compensation allegedly attributable to the condemnees' remaining property interests,[16] particularly where the Turnpike Commission still may face future claims from the remaining condemnees. Accordingly, we affirm.

### ORDER

AND NOW, this 7th day of January, 1999, the order of the Court of Common Pleas of

15. In doing so, we decline to accept Edwards' assertion that the $72,000 settlement in the State Mining Commission proceedings has no relevancy to the estimate of just compensation deposited in the eminent domain case. Edwards contends that the $72,000 settlement for support coal was not an award of compensation by the court and was paid without the Turnpike Commission claiming any entitlement to a credit or offset for that amount against the $77,500 paid into court in the eminent domain case. Further, Edwards argues that no such offset is warranted because the Code applies only to a Board of Viewers, and common pleas court proceedings on appeal from a Board of Viewers, and does not apply to State Mining Commission proceedings. We recognize that the legislature enacted the Code as the complete and exclusive procedure and law to govern all condemnations of property. We note, however, that section 303 of the Code, 26 P.S. §1–303, provides that the Code is not intended to affect, vary, alter or modify the State Mining Commission's exclusive jurisdiction to determine and assess damage for the right of support, that is, the coal to be left in place to support lands acquired by the Commonwealth. Clearly, a difficulty arises where, as here, the two become intertwined. Our supreme court recognized that involvement of two tribunals in condemnation proceedings could lead to anomalous results in

*Williams v. Department of Highways*, 423 Pa. 219, 227, 223 A.2d 865, 869 (1966), stating:

[W]e are fully aware ... that a property owner with both surface and subsurface coal rights must resort to two separate tribunals to secure just compensation for a deprivation of such rights, each tribunal to determine the existence, if any, of separate and distinct items of damage all of which arise from the same act of condemnation by the Commonwealth. Such result follows from the statute. The wisdom of such legislation is a matter within the province of the legislature and not the judiciary.

The result reached here provides relevance to each of the two proceedings.

16. Contrary to Edwards' claim, the Turnpike Commission is not objecting to the *manner* of distribution of the deposited funds; rather, because the Turnpike Commission objects to the distribution of estimated just compensation representing the right of support, it is challenging the *amount* to be distributed. Edwards notes that the Turnpike Commission will receive full credit for the entire $77,500 once a final determination of just compensation is made; however, this will be of no benefit if, as the Turnpike Commission believes, Edwards is not entitled even to the full $77,500.

Lawrence County, dated December 30, 1997, is hereby affirmed.