[Philadelphia, January, 15, 1829.]

## KERSHAW *against* SUPPLEE.

### IN ERROR.

Lease for fifteen years, reciting the intention of the lessees to erect a manufactory of cotton, &c. It was covenanted that if the lessor, his heirs, or assigns, should pay to the lessees the value of such buildings as they should erect, first giving three years' notice of the intention so to do, the lease should expire at the end of the fifteen years, otherwise to continue from three years to three years, until such notice and payment should be made, at the same rent. The lessor, for himself and his heirs, covenanted, at his and their cost, to keep the dam, race, &c., in good repair. The value of the buildings was not paid to the lessees. The lease was assigned, and the lessor having died, after having devised the reversion of the premises and other lands, to his five children, the assignee of the lease became, by different conveyances, the owner of three fifths of the reversion, in fee. The dam and race being out of repair, and the executor of the lessor not having, after notice, repaired the same, the assignee expended five hundred dollars in the necessary repairs, and brought an action against the executor of the lessor, to reimburse himself. It was agreed that the breach took place after the death of the lessor, and while the plaintiff was assignee of the lease, and owner of part of the reversion. *Held*, that the action could not be maintained.

*It seems*, that an action might be maintained against the two devisees who did not comply with the covenant to repair.

THIS case came before the court on a writ of error to the District Court for the city and county of *Philadelphia*, in which judgment was rendered for the defendant, upon a case stated in the nature of a special verdict.

The substance of the case is stated in the opinion of the court, which, after argument by *Rawle*, for the plaintiff in error, who cited 2 *Selw. N. P.* 95, and *J. R. Ingersoll, contra*, who cited *Co. Litt.* 223, *a. sec.* 361. *Id.* 338, *b.* *Godb.* 2. *Moore*, 54. 6 *Bro. Par. Ca.* 356. 5 *Rep.* 24, *a.* *Willes*, 585. *Sir W. Jones's Rep.* 245. *Cro. Ca.* 221,—was delivered by

HUSTON, J.—From the case, which I could wish was in some respects more fully stated, it appears that *John Supplee*, by indenture dated the 30th of *July*, 1804, demised to *William Mitchell* and *John G. Baxter*, their executors, administrators and assigns, certain premises in *Blockley* township, for the term of 15 years, reciting the intention of the lessees to erect thereon certain mills for carrying on a manufactory of cotton, &c.; and it was covenanted that if the lessor, his heirs or assigns, shall pay to the lessees the value of such buildings as they shall erect, (which value is to be ascertained in a mode prescribed,) first giving three years' notice of the intention so to do, the lease shall expire at the end of fifteen years, otherwise to continue from three years to three years until such notice and payment, at the same rent. "And the said *John Supplee* for himself and his heirs, doth hereby covenant and agree, at his and

(Kershaw *v.* Supplee.)

their own cost, to keep the dam, race, and other reservoirs of water necessary for the supply of the mills, in good repair."

The value of the buildings has not been paid to the lessees—*Kershaw*, the plaintiff, is assignee of the lessees; and *John Supplee* having died and devised the reversion of this and other lands after the death of his wife, who has since died, to his five children—*Kershaw* has, by different conveyances, become the owner of three fifths of the reversion, in fee.

The dam and race being out of repair, and the executor of *John Supplee* not having, after notice, repaired the same, *Kershaw*, the plaintiff, has expended five hundred dollars in the necessary repairs thereof, and brought this action to obtain reimbursement.

*John Supplee* died in 1804. His personal estate has been fully administered.

It is agreed that the breach took place after the death of the lessor, and during the time when the plaintiff was assignee of the lessees, and part owner of the reversion.

The above facts are taken from the case and are all the facts contained in it. From the lease and will referred to and which may be considered part of it, we are to understand that *John Supplee*, before the lease, owned a tract of land and mill—that the lessees were to have but a small part of that tract, and were to continue the race already made to *Supplee's* mill, past his mill to the building they were to erect. The dam, and that part of the race from the dam to *Supplee's* mill, were not on the premises demised, and it is not stated whether *Kershaw* is the owner of three fifths of the tract on which the dam is, or only of three fifths of the part demised—perhaps this may be immaterial.

Two questions are submitted:—1. Whether the plaintiff can recover on the covenant in this lease?

2. In what manner execution must be issued; that is, whether the parts purchased, and now held by *James Kershaw*, are liable?

There are several objections to the plaintiff's recovery. By the purchase of the fee simple of three fifths, the term for years for those three fifths is extinguished; for nothing is better settled than that where a term for years, or life, exists in a person in his own right, and he subsequently acquires the fee in his own right, the former is lost and merged in the latter. Where the term and the fee unite in the same person, but in different rights it is otherwise: so if the term is created for a special purpose not yet accomplished, and to be kept separate until that object is effected, equity considers them distinct; but if they had not entirely united, or rather if the term was not merged in the fee in this case, yet as *Kershaw*, as owner of the fee, is liable to keep up the dam and reservoirs, for himself or tenant, and as he cannot sue himself even joined with others, his situation is one of some difficulty, where we have no Court of Chancery.

He has brought suit, not against the two devisees of *John Sup-*

*plee,* from whom he has not purchased, and who have broken the covenant, but against the executor of *John Supplee.* I admit that generally the executor is liable to an action of covenant, wherever his testator was liable, if it be not determined by the death of the testator, or as some books say, if it be not personal to the testator, and to be performed by him alone, or if the breach be not in the time of the testator. (See 2 *Bac. Ab. Covenant, F.,* and cases there cited, and 3 *Com. Dig. Cov. C.* 1;) or, if it be not such a covenant as is to be performed by the person of the testator, and which the executor cannot perform. *Cro. Eliz.* 552, 553.

The modern decisions put it on more liberal, and I think, more satisfactory ground; viz. the true meaning of the contract. To be sure a man may covenant that an act shall be performed by another, and if it appear that he did so, and was understood at the time so to do, and this appears by the instrument, he is bound, and so are his executors, though he never derived any benefit, and though all the benefit has accrued to another. 2 *Burr.* 1190. The covenant here is, " The said *John Supplee,* for himself and his heirs, doth hereby covenant and agree, at *his* and *their* own cost, to keep the dam, &c. in repair." This covenant runs with the land and binds the heirs, and the devisees as assignees, and the assignees, though not named. Did he intend to bind his executors, that his heirs or assignees should keep up the dam, or did he mean to bind his heirs or assigns to keep it up, and to give an action against them if they neglected or refused so to do? He could enter into either of the covenants: the first would bind his personal representatives, the latter the owner of the fee, and the words seem to import the latter covenant. His executors cannot enter on the land to make the repairs without being trespassers. The covenant must be performed by the owner of the land; by *John Supplee,* while owner, by his heirs or assignees after his death, or after a sale by him. It is better for the tenant that this construction be put on it. *John Supplee's* executors, and *John Supplee's* estate may have no existence in a few years; but the covenant running with the land and binding whoever becomes owner, must give security to the tenant for ever. If it is said both may be bound, I admit it; and if the fair import of the words and spirit of the contract appeared to me to bind both, I would say they are bound. I think the executors are not liable to this action, because neither the words nor the intention seem to include them; because they cannot comply with this covenant; they would be trespassers by going on the land and digging or building. If liable it is for what has occurred in their own time; for not performing a covenant which they could not perform, and because the effect of a judgment would be that the plaintiff must take an execution against his own lands, for a judgment against the executors would bind all, and might be levied on any lands which belonged to *John Supplee,* at his death. But it is said, though the judgment was for the whole five hundred dollars, three fifths would be struck out of the

(Kershaw *v.* Supplee.)

execution or marked not to be collected. But more must be done; it must issue against the two fifths still belonging to the two children of *Supplee:* in other words, a general judgment against the estate of *Supplee,* must be collected by an execution on the shares of two out of five of his devisees. *John Supplee* had, it is stated, other lands, and the execution, I admit, could be levied on any one tract, though that tract belonged entirely to one devisee: but I deny that where land is undivided among heirs or devisees, an execution on a general judgment against the father could be levied on the undivided share of any one child.

Three of the heirs have sold to *Kershaw;* this judgment may be levied on other lands devised to them by their father, and those lands sold; but those three have broken no covenant, have been in no default, their father broke no covenant, his executors have broken none; they are then liable for a breach of which they are not guilty. It will not do to say they may bring suit and get compensation from the two who have broken the covenant; our law does not punish the innocent for the acts of the guilty, unless where they or their ancestor have made them responsible for those acts, which is not the case on this agreement, and it is not the least objection to this action that the plaintiff is, in fact, carrying on a suit against himself: his judgment, and his execution must be, in substance, against himself; for before he can take an execution for the shares of the two devisees, he must get a judgment against the two devisees.

I have no doubt of the power of this court to interpose its equitable powers in an action of covenant as much as in any other form of action. We have an early and strong case of this kind. 1 *Dall.* 210,—where, in covenant for rent, the court held the tenant not liable, because he did not and could not enjoy the property. But equitable power is exercised, when the party sued in justice and conscience ought to pay; not where the defendant has been in no default, has violated no contract: in such a case, if he can escape at law, equity does not hold him liable. If a suit shall be brought against the two devisees, who have not complied with a covenant which binds them, I should not be willing to permit them to escape because the form of action, or the nature of their interest, would compel the injured party to apply to chancery, where there is a Court of Chancery.

Judgment affirmed.