Carol M. NICOLETTI, Appellant,

v.

**ALLEGHENY COUNTY AIRPORT
AUTHORITY.**

Commonwealth Court of Pennsylvania.

Argued Oct. 7, 2003.
Decided Jan. 20, 2004.

Diana Slivinska, Clinton, for appellant.

Judith F. Olson, Pittsburgh, for appellee.

BEFORE: LEADBETTER, Judge, and LEAVITT, Judge, and KELLEY, Senior Judge.

OPINION BY Senior Judge KELLEY.

Carol M. Nicoletti (Condemnee) appeals from the order of the Court of Common Pleas of Allegheny County (trial court) overruling her preliminary objections to the Declaration of Taking filed by the Allegheny County Airport Authority (Authority) pursuant to the Pennsylvania Eminent Domain Code [1] and the Municipality Authorities Act of 1945.[2] We quash the appeal, vacate the trial court's order, and dismiss the Declaration of Taking.

Condemnee owns the mineral rights in fee for a number of parcels of property located in Findlay Township, Allegheny County. Allegheny County owns the surface rights to these parcels in fee, through prior condemnation, as they are in close proximity to Pittsburgh International Airport.[3] On September 16, 1999, Allegheny County entered into the Airport Operation, Management and Transfer Agreement and Lease between Allegheny County, Pennsylvania and the Allegheny County Airport Authority (Lease Agreement) with the Authority. The Lease Agreement states, in pertinent part, that "[t]he County, at Closing, demises and lets unto the Authority and the Authority leases from the County, the Airports, including all lands, buildings, fixtures, improvements, structures, aviation easements, rights of access, and appurtenances pertaining thereto . . . for the Demised Term [of 25 years] . . .", and that the Authority has two options to extend the term of the Lease Agreement by two additional 25–year terms. Reproduced Record (R.R.) at 79a.

On November 9, 2001, the Authority's Board of Directors adopted a Resolution authorizing the condemnation of the outstanding mineral rights owned by Condemnee with respect to the subject par-

---

1. Act of June 22, 1964, Special Sess., P.L. 84, *as amended*, 26 P.S. §§ 1–101–1–903.

2. Act of May 2, 1945, P.L. 382, *as amended*, 53 P.S. §§ 301–322. However, the Municipality Authorities Act of 1945 was repealed and replaced on June 19, 2001, prior to the filing of the instant declaration of taking, by the *Municipality Authorities Act*, 53 Pa.C.S. §§ 5601 5622. The Authority's power to condemn property by eminent domain is now found in Section 5615 of the Municipality Authorities Act which provides, in pertinent part:

   (a) **Authorization.-**
   (1) Except as provided in paragraph (2), the authority shall have the power to acquire by purchase or eminent domain proceedings either the fee or the rights, title, interest or easement in such lands, water and water rights as the authority deems necessary for any of the purposes of this chapter . . .
   (2) The right of eminent domain does not apply to:

   (i) Property owned or used by . . . the Commonwealth or any of its political subdivisions . . .
   53 Pa.C.S. § 5615(a).

3. The instant appeal is the latest in a long line of cases involving parcels of property owned by Condemnee that are in proximity to the former and present airports serving the Pittsburgh area. *See Captline v. County of Allegheny*, (Pa.Cmwlth., No. 1689 C.D.2000), *petition for allowance of appeal denied*, 567 Pa. 747, 788 A.2d 379 (2001); *Captline v. County of Allegheny*, 727 A.2d 169 (Pa.Cmwlth.), *petition for allowance of appeal denied*, 560 Pa. 711, 743 A.2d 923 (1999); *In re Condemnation by the County of Allegheny of Certain Oil, Gas, Limestone and Mineral Properties*, 719 A.2d 1 (Pa.Cmwlth.1998); *Captline v. County of Allegheny*, 693 A.2d 619 (Pa.Cmwlth.1997), *remanded*, 553 Pa. 92, 718 A.2d 273 (1998); *Captline v. County of Allegheny*, 662 A.2d 691 (Pa.Cmwlth.1995); *Captline v. County of Allegheny*, 74 Pa.Cmwlth. 85, 459 A.2d 1298 (1983).

cels. On May 10, 2002, the Authority filed a Declaration of Taking to condemn Condemnee's property which states, in pertinent part:

> 3. This Declaration of Taking was authorized by the following: a Resolution of the Board of Directors of the [Authority] adopted November 9, 2001 . . .
>
> 4. The purpose of this condemnation is to establish and maintain air navigation access and terminal facilities authorized by the Municipality Authorities Act of 1945 . . .
>
> 5. A statement of the property and mineral interests being condemned and hereby taken (which are located in Moon and Findlay Townships, Allegheny County, Pennsylvania), is more particularly set forth in Exhibit "A" hereto attached. Also a plan of the property being taken and condemned is hereto attached and marked Exhibit "B". The plan of the property being taken and condemned has been designated the "Mineral Estate Plan of Acquisition—Phase VI" and has also been filed with the Planning Department in the Office of the Recorder of Deeds of Allegheny County.

> * * *

> ■ 7. The purpose of this condemnation is to assure unto the [Authority] the absolute and unqualified fee simple title, free and clear of all liens and encumbrances, including all mineral estates, leasehold estates, easements and other interests of all record owners thereof, or any party having an interest therein (except as set forth in Exhibit "A"), the names of which owners and parties in interest and their respective interests condemned, if any, are more particularly set forth and tabulated in Exhibit "C" hereto attached.

R.R. at 1a–2a.[4]

On June 13, 2002, Condemnee filed preliminary objections to the Authority's Declaration of Taking, in which she alleged: (1) the stated purpose of the condemnation, i.e. the vesting of fee simple absolute title to the property in the Authority, cannot be achieved because Allegheny County owns the surface estate to the property in fee and the Authority merely has a posses-

---

4. With respect to a declaration of taking, Section 402 of the Eminent Domain Code provides, in pertinent part:

(a) Condemnation, under the power of condemnation given by law to a condemnor, which shall not be enlarged or diminished hereby, shall be effected only by the filing in court of a declaration of taking, with such security as may be required under section 403(a), and thereupon the title which the condemnor acquires in the property condemned shall pass to the condemnor on the date of such filing, and the condemnor shall be entitled to possession as provided in section 407.

(b) The declaration of taking shall be in writing and executed by the condemnor, shall be captioned as a proceeding in rem, and shall contain the following:

* * *

(4) A brief description of the purpose of the condemnation.

(5) A description of the property condemned sufficient for the identification thereof . . .

(6) A statement of the nature of the title acquired, if any . . .

26 P.S. § 1–402(a), (b)(4), (5) & (6). Thus, the title to the condemned property as stated in the declaration of taking passes to the condemnor on the date that the declaration is filed by operation of law. *Id.; In re Condemnation of the Stormwater Management Easements,* 829 A.2d 1235 (Pa.Cmwlth.2003); *Fetter v. Department of Transportation,* 38 Pa. Cmwlth. 535, 394 A.2d 657 (1978).

sory interest under the terms of the Lease Agreement; (2) the condemnation is not for a public purpose as the Authority already has a sufficient interest in the property to maintain the airport and terminal facilities and is condemning the property to lease it to other private parties; and (3) the Authority's use of its condemnation powers was fraudulent, arbitrary, capricious and done in bad faith.

■ Argument on the preliminary objections was conducted before the trial court. On January 9, 2003, the trial court entered an order and opinion disposing of Condemnee's preliminary objections. Specifically, the court determined: (1) the Lease Agreement was the equivalent to the sale of the County's interest in the property to the Authority for the term of the lease; (2) the Authority's stated purpose to free the property from all encumbrances is a public purpose; and (3) the Authority's condemnation of the outstanding interests in the land underlying the airport complex is not fraudulent, arbitrary, capricious or done in bad faith. As a result, the trial court issued an order overruling Condemnee's preliminary objections to the Authority's Declaration of Taking. Condemnee then filed the instant appeal in this Court.[5]

In this appeal, Condemnee claims [6]: (1) the trial court erred in failing to dismiss the instant Declaration of Taking in that

the County was an indispensable party to the proceedings as the owner in fee of the surface estate of the condemned property; (2) the trial court erred in determining that the Lease Agreement between Allegheny County and the Authority conveyed the County's fee interest in the surface estate of Condemnee's land; (3) the trial court erred in determining that the Authority's condemnation was for a public purpose; and (4) the trial court erred in determining that the Authority's condemnation was not fraudulent, arbitrary, capricious and done in bad faith.

■ As noted above, Condemnee first claims that the trial court erred in failing to dismiss the instant Declaration of Taking in that the County was an indispensable party to the proceedings as the owner in fee of the surface estate of the condemned property.[7] We agree.

■ Both the trial court below, and the Authority in this appeal, assert that the instant Lease Agreement conveyed a property interest in the airport land and structures to the Authority. It is true that leases do convey a proprietary interest in the property conveyed thereunder for the demised term. *See, e.g., Stonehedge Square Limited Partnership v. Movie Merchants, Inc.,* 552 Pa. 412, 715 A.2d 1082 (1998); *Adams Sanitation Co., Inc. v. Department of Environmental Protection,*

---

5. In eminent domain proceedings, where a trial court has either sustained or overruled preliminary objections to a declaration of taking, this Court's scope of review is limited to determining whether the trial court abused its discretion or committed an error of law. *In re Condemnation by the City of Coatesville of Certain Properties and Property Interests for Use as a Public Golf Course,* 822 A.2d 846 (Pa.Cmwlth.2003).

6. In the interest of clarity, we reorder the claims raised by Condemnee in the instant appeal.

7. As noted by the Authority in its appellate brief, "[t]he Authority has never asserted that the County is an indispensable party to the proceedings. To the contrary, the Authority has always taken the position that it has the right, power and authority to condemn the mineral estates at issue and that the County is not necessary to the condemnation proceedings ..." Brief for Appellee at 16.

552 Pa. 304, 715 A.2d 390 (1998); *Commonwealth v. Monumental Properties*, 459 Pa. 450, 329 A.2d 812 (1974).

■ However, it is well settled that where a lease conveys a lesser estate than that possessed by the lessor, it does not convey the lessor's fee title in the property. Indeed, as the Pennsylvania Supreme Court has noted:

> [B]lackstone says, book II, chap. 9, § 144; 'Because no livery of seisin is necessary to a lease for years, such lessee is not said to be seised, or to have true legal seisin of the lands. Nor indeed does the bare lease vest any estate in the lessee; but only gives him a right of entry on the tenement, which right is called his interest in the term, or interesse termini: but when he has actually so entered, and thereby accepted the grant, the estate is then, and not before, vested in him, and he is possessed, not properly of the land, but of the term of years; the possession or seisin of the land remaining still in him who hath the freehold.'

*Sheaffer v. Baeringer*, 346 Pa. 32, 34, 29 A.2d 697, 698 (1943). *See also In re Wilson's Estate*, 349 Pa. 646, 649, 37 A.2d 709, 710 (1944) ("[A] tenant is 'one who occupies land or the premises of another in subordination to the other's title, and with his assent, express or implied.' ") (citation omitted); *Sanderson v. City of Scranton*, 105 Pa. 469, 472–473 (1888) ("[I]t is one of the essential properties of a lease that its duration shall be for a determinate period, shorter than the duration of the estate of the lessor, hence the estate demised is called a 'term', and necessarily implies a reversion. If the entire interest of the lessor is conveyed, in the whole or a portion of his land, the conveyance cannot therefore be properly regarded as a demise ....").

■■ Under the terms of the instant Lease Agreement, the County expressly and specifically retained a reversionary interest[8] in all of the airport property that was leased to the Authority thereunder. Under its terms, the Authority is required to yield to the County any and all interest it has in the airport property based on either the Authority's material default of the terms of the Agreement, the mutual agreement of the parties, or the expiration of the demised term of the Agreement. *See* Sections 16.02, 18.01 and 18.02 of the Lease Agreement.[9,10]

---

8. As the Pennsylvania Supreme Court has recently noted, " '[a]n estate in reversion is the residue of an estate left to the grantor, to commence in possession after the determination of some particular estate granted out by him.' *Smith v. Glen Alden Coal Co.*, 347 Pa. 290, 32 A.2d 227, 234 (1943) (citing Blackstone, Vol. 2. § 176). A reversionary interest is used to define the interest that a person has in the reversion of property. *See* BLACK'S LAW DICTIONARY 1186 (5th Edition 1979). It is the right to 'the future enjoyment of property, at present in the possession or occupation of another.' *Id.*" *Buffalo Township v. Jones*, 571 Pa. 637, 645, 813 A.2d 659, 664 (2002) (footnote omitted).

9. Section 16.02 of the Lease Agreement states, in pertinent part:
   16.02 *Remedies*

A. ·
R.R. at 111a.
   In addition, Sections 18.01 and 18.02 of the Lease Agreement state, in pertinent part:
   18.01 *Termination*
   This Agreement shall be terminated:
   (i) at the end of the Demised Term including any extension option, if not further extended by the mutual agreement of the parties; or
   (ii) by mutual consent of the parties ...
   (iii) by an uncured material default ...
   18.02 *Effect of Termination*

   * * *

C.
R.R. at 116a.

10. The conclusion that the County did not convey its fee ownership of the airport prop-

The instant Declaration of Taking filed by the Authority states, in pertinent part, that the purpose of the condemnation was to "[t]o assure unto the [Authority] the absolute and unqualified fee simple title[11], free and clear of all liens and encumbrances, including all mineral estates, leasehold estates, easements and other interests of all record owners thereof ..." R.R. at 1a–2a. In order to obtain title to the airport property in fee simple absolute, the Authority was required to extinguish all adverse interests in the property including that of the County[12] and that of the Condemnee.[13,14] In addition, as the

erty is also supported by Article XX of the Lease Agreement which specifically provides, in pertinent part, that "[a]t any time following the Closing Date, the Authority shall have the right to purchase all of the property then comprising the Airport Assets, including the real property, upon delivering to the County the Authority's Indenture ... Upon receipt of the Authority Indenture and supporting Opinion from the Authority, the County shall, subject to obtaining all approvals as may be required by applicable law, quit claim to the Authority the County's retained interest in the Airport Assets, and the County shall convey to the Authority by quit claim deed all of the property then comprising the Airports ..." See R.R. at 120a.

**11.** With respect to the ownership of title in "fee simple absolute", it has been noted:

An estate in fee simple is the greatest estate and most extensive interest which a person can possess in landed property, being an absolute estate in perpetuity and embracing all of the estates that may be carved therefrom. A title in fee or fee simple is a full and absolute estate, beyond and outside of which there is no other interest or right. The tenant of such an estate may devise it, notwithstanding restraints on his or her power of alienation.

A fee simple absolute is a form of ownership in which a party has unlimited power to sell, transfer, alienate, or bequeath the property in any lawful manner. The bundle of rights held by the owner of the fee can be broken into various other bundles such as the land, buildings on the land, easements, and leases and subleases.

A general restraint on the voluntary alienation of a fee simple interest is void. The rule against such restraints, however, applies only where the grant in the first instance conveys an absolute fee simple estate, and not where the original grantor does not part with all the incidents of the fee, as where he or she conveys only a base or qualified fee ...

23 P.L.E.2d Estates in Property § 4 at 429 (2002) (footnotes and citations omitted).

**12.** See, e.g., In re Chambers Development Securities Litigation, 912 F.Supp. 822, 843 fn. 15 (W.D.Pa.1995) ("[I]n Pennsylvania, whose laws govern the lease, the general rule is that purchase of the fee simple by the tenant results in the merger of the leasehold with the fee). Waldron v. Wahl, 286 Pa. 237, 133 A. 252 (1926) (general rule is that where a person holds a term for years and subsequently acquires the fee, 'the former is lost and merged in the latter'); see also Friedman, Pennsylvania Landlord–Tenant Law and Practice, § 3.5(a) ('The sale of the leased premises by the landlord should have no legal effect upon the continuation of the lease agreement, unless the leased premises was sold to the tenant, in which case the lease terminates by operation of law.' "). See also Kershaw v. Supplee, 1 Rawle 131, 132 (1829) ("[B]y the purchase of the fee simple of three fifths, the term for years for those three fifths is extinguished; for nothing is better settled than that where a term for years, or life, exists in a person in his own right, and he subsequently acquires the fee in his own right, the former is lost and merged in the latter. Where the term and the fee unite in the same person, but in different rights it is otherwise ...").

**13.** See, e.g., Smith at 304, 32 A.2d at 234–235 ("[I]t is well recognized in Pennsylvania that there may be three estates in land, namely, coal, surface, and right of support, so that one person may own the coal, another the surface, and the third the right of support. 'In the absence of express waiver * * * [or one clearly implied] the grantee of minerals takes the estate subject to the burden of surface support.' 'Where there is a separation of the minerals from the surface, the owner of the mineral estate owes a servitude of sufficient support to the superincumbent estate.' This servitude of support is an estate in land, sometimes referred to in this commonwealth as 'the third estate' ".) (citations omitted).

Declaration of Taking must state the purpose of the taking and the title taken pursuant to Section 402 of the Eminent Domain Code, 26 P.S. § 1–402, title to the airport property, in fee simple absolute, purportedly passed to the Authority at the time that the Declaration of Taking was filed by operation of law. *Id.; In re Condemnation of the Stormwater Management Easements; Fetter.*

However, as noted above, pursuant to Section 5615(a)(2) of the Municipal Authority's Act, the Authority cannot obtain title by eminent domain to any "[p]roperty owned or used by ... the Commonwealth or any of its political subdivisions ..." 53 Pa.C.S. § 5615(a)(2). Thus, the Authority does not possess the power to condemn the County's interest in the airport property absent the County's express consent. *See, e.g., Urban Redevelopment Authority of Pittsburgh v. Hackaday,* 93 Pa.Cmwlth. 378, 501 A.2d 349, 350 (1985) ("[S]ection 12 of the Urban Redevelopment Law, Act of May 24, 1945, P.L. 991, *as amended,* 35 P.S. § 1712, the enabling act for Redevelopment Authorities provides, 'no real property belonging to a city, county or to the Commonwealth may be acquired without its consent.' There is nothing in the record indicating that the City gave its consent thus validating the taking. The notices sent by the Authority to the City indicated the [prior owners] as owner. This cannot be construed as an implied consent by the City.").

Moreover, and more importantly, Section 11.02(iii) of the Lease Agreement provides, in pertinent part, that "[t]he County

agrees to cooperate with the Authority in any litigation or proceeding undertaken to clear title to any real property on which any of the Airport Assets are situate." Thus, the express terms of the Lease Agreement specifically contemplate the County's active participation in any proceedings to clear title to the realty underlying the airport. There is absolutely nothing in the certified record of this case demonstrating that the County either explicitly or implicitly conveyed its remaining interest in the airport property to the Authority, or that it actively participated in these proceedings to clear the title to the airport property and to vest title in itself, or in the Authority, in fee simple absolute.

In *Biernacki v. Redevelopment Authority of the City of Wilkes–Barre,* 32 Pa. Cmwlth. 537, 379 A.2d 1366 (1977), property owned by John and Alice Biernacki at 98 Franklin Street in the City of Wilkes–Barre was condemned by the City's Redevelopment Authority as part of an urban renewal project, and the Biernacki's received compensation for the taking. After it was determined that the building on the property at 98 Franklin Street did not need to be razed as initially planned, the property was conveyed by the Redevelopment Authority to an adjoining landowner, Hart Realty Co. When the Biernacki's learned that the building on the property would not be razed, they filed a petition for a rule to show cause why the property should not be reconveyed to them pursuant to Section 410(a) of the Eminent Domain Code.[15] The Redevelopment Authori-

---

*See also Tinicum Township v. Jones,* 723 A.2d 1068, 1071 (Pa.Cmwlth.1998) ("[U]nder the doctrine of merger of estate in land, a lesser estate is merged into a greater estate whenever the two estates meet in the same person. *Griffith v. McKeever,* 259 Pa. 605, 103 A. 335 (1918) ...").

**14.** Undoubtedly, in light of the foregoing, the County would be vested with title to the airport property in fee simple absolute if it had acquired all adverse interests through condemnation.

**15.** Section 410(a) of the Eminent Domain Code provides, in pertinent part:

ty objected to the Biernacki's petition on the basis that an indispensable party, i.e., the owner Hart Realty Co., was not a party to the proceedings. Nonetheless, the trial court issued an order requiring the Redevelopment Authority to "revoke" the condemnation proceedings against the property and to "revest title" to the property in the Biernacki's. The Redevelopment Authority then filed an appeal from the trial court's order in this Court.

In disposing of the appeal, this Court stated the following, in pertinent part:

> Although Hart Realty Co., Inc. is the owner in fee of 98 Franklin Street, it is not, and never has been a party to these proceedings. The court below dismissed the Authority's objection that an indispensible party was not joined by simply noting that the Pennsylvania Rules of Civil Procedure do not apply to proceedings under the Eminent Domain Code. While it is true that the Rules of Civil Procedure are not applicable in condemnation cases, the issue of nonjoinder of an indispensible party is not so easily avoided.

> No court may grant relief in the absence of an indispensible party. An indispensable party is one whose rights are so connected with the claims of the litigants that no relief can be granted with-

out infringing upon those rights. As noted, Hart Realty Co., Inc. is, and has been since November 1975, the owner of 98 South Franklin Street. Clearly, the owner of real estate is an indispensible party to proceedings seeking transfer of the title to the property to another and culminating in an order purportedly vesting title in another. It would be difficult to imagine a darker cloud on one's title than that created by the court's order in this case. An indispensible party not having been joined, the court below was without jurisdiction to grant any relief in this case ...

*Id.* at 1367–1368 (citations omitted). As the trial court was without jurisdiction to grant any relief in the case, this Court issued an order quashing the appeal, vacating the trial court's order granting the Biernacki's petition, and dismissing the petition without prejudice to the Biernacki's right to institute a new action wherein all indispensable parties are made parties to the proceeding. *Id.* at 1368.

■ Likewise, the County was never a party to the instant "[p]roceedings seeking transfer of the title to the [airport] property to another and culminating in an order purportedly vesting title in another ..." *Id.*[16] As a result, the trial court was with-

---

(a) If a condemnor has condemned a fee and thereafter abandons the purpose for which the property has been condemned, the condemnor may dispose of it by sale or otherwise: Provided, however, That if the property has not been substantially improved, it may not be disposed of within three years after condemnation without first being offered to the condemnee at the same price paid to the condemnee by the condemnor ...
26 P.S. § 1–410(a).

**16.** *See also* Section 507(a) of the Eminent Domain Code, 26 P.S. § 1–507(a) ("[T]he claims of all the owners of the condemned property, including joint tenants, tenants in common, life tenants, remaindermen, owners

of easements, or ground rents, and all others having an interest in the property, and the claims of all tenants, if any, of the property, shall be heard or tried together ..."); *Pennsylvania Department of Transportation v. Montgomery Township*, 655 A.2d 1086, 1089 (Pa.Cmwlth.), *petition for allowance of appeal denied*, 542 Pa. 651, 666 A.2d 1059 (1995), wherein this Court noted the following, in pertinent part:

With regard to the value of a reversionary interest [in property taken by condemnation], comment a to section 53 of the Restatement of Property states:

The condemning party is generally privileged to join in a single proceeding all persons having estates or interests in the affect-

out jurisdiction to entertain the instant Declaration of Taking. *Id.*[17]

Accordingly, the instant appeal is quashed, the trial court's order is vacated, and the Declaration of Taking is dismissed without prejudice.[18]

### ORDER

AND NOW, this 20th day of January, 2004, the above-captioned appeal is quashed; the order of the Court of Common Pleas of Allegheny County, entered January 9, 2003 at No. GD 2002–9327, is vacated; and the Declaration of Taking filed by the Allegheny County Airport Authority, in the Court of Common Pleas of Allegheny County at No. GD 2002–9327, is dismissed without prejudice to the Allegheny County Airport Authority's right to institute a new action wherein all indispensable parties are made parties to the proceeding.

Jurisdiction is relinquished.

ed land ... [In general, the procedure] is to fix a lump sum value for the estate in fee simple absolute and then to take up the distribution of this sum among the persons having interests in the affected land.
RESTATEMENT OF PROPERTY § 53 cmt. a (1936) ...

17. It is well settled that questions of jurisdiction can never be waived, and they may be raised at any time by the parties or *sua sponte* by an appellate court. *Pennhurst Medical Group v. Department of Public Welfare,* 796 A.2d 423 (Pa.Cmwlth.2002).

18. Based on our disposition of this claim, we will not address the other claims raised in this appeal.